UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUMPHREY INSURANCE AND FINANCIAL SERVICES, INC., an Oklahoma corporation; and COURTNEY HUMPHREY, an Individual, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **Case No. CIV-22-977-SLP** |
| STATE FARM MUTUAL AUTOMOBILE INS. CO.; STATE FARM LIFE INSURANCE CO.; STATE FARM FIRE AND CASUALTY CO.; STATE FARM GENERAL INSURANCE CO, a collection of foreign insurance companies, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

**DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Respectfully submitted,

*/s/ Lance E. Leffel*
Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK  73102
(405) 235-5500
(405) 235-2875 (fax)
*lleffel@gablelaw.com*

{S624034;}

Defendants State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company (collectively, "State Farm"), by and through undersigned counsel, hereby move the Court pursuant to Federal Rule of Civil Procedure Rule 12(c), for partial judgment on the pleadings with respect to the allegations of tortious interference with contract/business relations, tortious interference with prospective economic advantage, and defamation.[1]

## I.   INTRODUCTION

State Farm is the leading automobile and homeowner insurer in the United States, offering many insurance and financial services products to customers across the country. State Farm markets these products through approximately 19,200 independent contractor agents ("Agents"). Independent contractor State Farm Agents each enter into an Agent's Agreement with State Farm ("Agent's Agreement"), terminable at will by either party, which

---

[1] On May 17, 2021, State Farm filed a motion to dismiss these claims in the Canadian County District Court that was denied under the "no set of facts" standard. *Edelen v. Bd. of Comm'rs of Bryan Cnty.*, 2011 OK CIV APP 116, ¶ 3, 266 P.3d 660 (Oklahoma courts interpret the pleading standard to mean that a plaintiff's claims cannot be dismissed at the offset of the case "unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief."). Now, State Farm brings a motion for judgment on the pleadings so that these issues can be resolved by this Court under the federal pleading standard, which is stricter than the "no set of facts" standard. Here, Plaintiffs must bring forth sufficient factual allegations to nudge their claims across the line from conceivable to plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). State Farm believes that bringing this motion and considering it under the federal pleading standard will help resolve this case in a more appropriate manner, especially when State Farm was unable to remove this case for a lengthy period of time due to the inappropriate joinder of an individual defendant who Plaintiffs then dismissed without even serving the petition on the individual.

provides the terms upon which Agents are authorized to offer insurance and financial services products, and by which Agents agree that they will comply with all state and federal laws, rules and regulations.[2]

This lawsuit concerns a now-former State Farm Agent, Courtney Humphrey ("Humphrey"). State Farm terminated Humphrey's Agent's Agreement effective November 20, 2020, after an investigation into her agency, Humphrey Insurance and Financial Services ("HIFS"), revealed significant compliance issues and inappropriate conduct. The claims brought by Humphrey and HIFS (collectively, "Plaintiffs") against State Farm ***do not*** relate to the termination of the Agent's Agreement. The Agreement provides State Farm the right to terminate it at will and Plaintiffs presumably recognize this. Instead, Plaintiffs allege State Farm breached the Agent's Agreement by: "labeling Plaintiff HIFS as an Independent Contractor, but requiring Plaintiff HIFS to follow State Farm's procedures and processes; taking, moving and transferring clients and customers of Plaintiff HIFS's Agency to other State Farm agencies without justification; and wrongly

---

[2] The Agent's Agreement between State Farm and Plaintiffs is attached hereto as Exhibit 1. A court generally may not consider materials outside the pleadings when ruling on a motion for judgment on the pleadings. However, courts applying Oklahoma law "may review . . . [a] policy without converting defendant's motion into one for summary judgment because the . . . policy is referred to in the petition and is central to plaintiff's claim . . . and plaintiffs do not challenge . . . its authenticity." *Mays v. Liberty Mut. Fire. Ins. Co.,* No. CIV-16-996-F, 2016 U.S. Dist. LEXIS 202280, at *5 n. 1 (W.D. Okla. Oct. 21, 2016). Here, the Agent's Agreement is central to Plaintiffs' claims against State Farm and is referenced repeatedly throughout the pleadings. *(See generally* Petition.) It is also included as Exhibit 1 to State Farm's Amended Answer filed August 24,2021 in the state court action prior to removal. Accordingly, this Court may review the Agent's Agreement when ruling on State Farm's Motion for Partial Judgment on the Pleadings without converting the Motion into one for summary judgment.

interfering with Plaintiff HIFS's authority for employees of Plaintiff's HIFS's Agency." (Petition, ¶ 27). While State Farm denies these allegations, it submits that the parties' relationship is governed by the Agent's Agreement and is not presently moving for judgment on the breach of contract claim.

State Farm does, however, contend Plaintiffs' remaining claims for interference with contract/business relations, interference with prospective economic advantage, and defamation do not satisfy the *Twombly/Iqbal* pleading standard discussed below, and should therefore be dismissed. As explained below, (1) Plaintiffs' "interference" claims fail because State Farm cannot interfere as a matter of law with an existing or prospective contract/business relationship to which it is a party or beneficiary; and (2) Plaintiffs' defamation claim fails because Humphrey admits she engaged in the conduct that is central to that claim, and also because any purported statements made by State Farm about such conduct would be privileged and are insufficiently detailed within the Petition to state a claim for relief. Accordingly, State Farm moves this Court to dismiss Plaintiff's Petition in part.[3]

## II.  **STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c)

---

[3] State Farm is not moving to dismiss the claim for constructive fraud/negligent misrepresentation because it was asserted against Defendant Clarence Holley only, and Plaintiffs dismissed their claims against Holley on October 14, 2022.

is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under Rule 12(b)(6), a complaint should be dismissed that fails to "state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must provide more than labels, conclusions, and a formulaic recitation of the elements of a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise the right to relief above the speculative level." *Id.* A plaintiff must offer specific factual allegations to support each claim – allegations that are sufficient to support a plausible claim that the defendant is liable. *Kan. Penn Gaming, LLC. v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

### III.  ARGUMENT

Plaintiffs' claims for interference with contract/business relations, interference with prospective economic advantage, and defamation have not been, and cannot be, adequately pleaded. Even taking the facts pled as true, and drawing any reasonable inferences from them, the law governing these claims does not, and cannot support, a ruling in favor of Plaintiffs. Accordingly, Plaintiffs' Petition should be dismissed, in part, for failure to state a claim.

#### A.  **Plaintiffs Cannot State a Viable Claim for Tortious Interference with Contract/Business Relations.**

To adequately plead a claim for tortious interference with a contractual or business relationship, Plaintiffs must allege: "(1) interference with an existing contractual or business

right; (2) such interference was malicious or wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1154 (10th Cir. 2012) (citing *Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.,* 204 P.3d 69, 74 (Okla. 2009)); *Craig Pc Sales & Serv. v. Co. V,* No. CIV-17-003-F, 2018 U.S. Dist. LEXIS 239280, at *9 (W.D. Okla. April 30, 2018) (citations omitted). A claim for tortious interference is viable ***only*** when the interference was done by one who is ***not*** a party to the contract or business relationship. *Wilspec,* 204 P.3d at 74 (emphasis added). In addition, the element of malice requires a showing of bad faith and means, "an unreasonable and wrongful act done intentionally, without just cause or excuse." *Craig Pc Sales & Serv.,* 2018 U.S. Dist. LEXIS 239280, at *25 (citing *Tuffy's Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1165 (Okla. 2009)). Here, Plaintiffs' claim fails because State Farm cannot interfere with existing contractual or business relations to which it was a party, nor do Plaintiffs allege sufficient facts showing State Farm somehow interfered maliciously.

        1.    *State Farm Cannot Interfere With Existing Contractual Or Business Relations To Which It Is A Party.*

First, Plaintiffs allege, "Plaintiff HIFS had contracts with its clients in whom they had agreed to purchase insurance through them from one or more of the State Farm Defendants." (Petition, ¶ 30). Plaintiffs, however, cannot make such an allegation in good faith because, as the Agent's Agreement makes clear, customers belong to State Farm, and not to individual Agents. *See e.g.,* Exhibit 1, at 2 ("Information regarding names, addresses,

and ages of the ***customers of the Companies . . . are*** trade secrets and confidential business information ***wholly owned by the Companies*** . . . .") (emphasis added). A claim for tortious interference is viable only when the interference is done by one who is a ***stranger*** to the contract or business relationship. *See Medical Diagnostic Labs., LLC v. Health Care Servs. Corp.*, No. CIVD-160-902-D, 2017 U.S. Dist. LEXIS 105976, at *8 (W.D. Okla. July 10, 2017). State Farm was not a stranger. Instead, it was a ***party*** to the Agent's Agreement, which governed any relationship or alleged contracts Plaintiffs had with customers. Under the Agent's Agreement, those customers were State Farm's and not Plaintiffs'. The Agent's Agreement makes clear that Plaintiffs did not have a direct contractual relationship with customers. Instead, Plaintiffs marketed, solicited and serviced insurance products to State Farm customers pursuant to the terms of the Agent's Agreement. Any allegation to the contrary is unavailing in light of the unambiguous language of the Agent's Agreement.

Further, and as set forth in the Agent's Agreement and recognized by Plaintiffs in the Petition, State Farm was directly involved with State Farm customers as it owned "customer information, property insured identification, expiration or renewal dates of policies, and account and investment information." (Petition, ¶ 18). Plaintiffs also admit customers "agreed to purchase insurance through them from one or more of the State Farm Defendants." *(Id., ¶ 30)*. Simply put, it is undisputed any alleged prospective customers would enter a contract to purchase ***State Farm*** insurance products. *(Id.)* Thus, State Farm could not have tortiously interfered with any such contracts or relationships with State Farm customers. *See, e.g., Davis v. PMA Cos.,* No. CIV-11-359-C, 2013 U.S. Dist. LEXIS 31435,

at *12 (W.D. Okla. Mar. 7, 2013) (citing Oklahoma law for proposition "the [tortious interference] claim is viable only if the interferer is ***not a party to the contract or business relationship***" and holding the parent corporation was not a stranger to an employment agreement between plaintiff and employing business entity "given the nature of the contracts and [defendant's] [ownership] . . . and control over" the employing business entity) (quoting *Wilspec,* 204 P.3d at 74 (emphasis in original)); *cf. Hammond v. Lyndon Southern Ins. Co.,* No. CIV-19-245-D, 2020 U.S. Dist. LEXIS 150156, at *1546 (W.D. Okla. Aug. 19, 2020) (holding that plaintiffs' claim that insurance agent tortiously interfered with her insurance policy failed as a matter of law by virtue of the existing business and contractual relationship between the agent and the insurance company).

        2.    *Plaintiffs Do Not Allege Sufficient Facts Establishing Malice.*

Additionally, Plaintiffs fail to allege facts suggesting that State Farm somehow acted with malice when it purportedly "unilaterally, intentionally and without cause, moved, transferred, and in other ways improperly pulled clients from Plaintiff HIFS's Agency and placed the same with different State Farm agents/agencies." (Petition, ¶ 33). Plaintiffs' allegations are also devoid of any information describing the number of contracts/relationships at issue, the relevant time period of any alleged tortious interference, or any other facts demonstrating malice or wrongfulness. Moreover, as a matter of law, State Farm could not have acted "with malice" when the alleged acts involve moving its own customers. Even assuming *arguendo* State Farm took "malicious" action

with its own customers beyond what is permissible under the Agent's Agreement, Plaintiffs would have a breach of contract claim — not a tortious interference claim.

Accordingly, the Court should dismiss the claim because Plaintiffs have failed to plead the essential elements of their tortious interference with contract/business relations claim.

### B. Plaintiffs Cannot State A Viable Claim For Tortious Interference With Prospective Economic Advantage.

Plaintiffs' Petition also fails to sufficiently state a claim for tortious interference with prospective economic advantage. Plaintiffs allege they "had an expectation of business continuation through established clients and prospective economic opportunities through securing and serving future clients." (Petition, ¶ 43). Plaintiffs also allege that State Farm "purposefully interfered with and disrupted Plaintiff HIFS's prospective economic business advantage because State Farm financially profits by terminating agents . . . ." (*Id.*, ¶ 46).

To survive a motion for judgment on the pleadings for tortious interference with prospective economic advantage, Plaintiffs must show: "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Craig Pc Sales & Serv.,* 2018 U.S. Dist. LEXIS 239280, at *25 (citations omitted). Plaintiff must specifically allege the interference was the "***purpose*** of the tortfeasor's act, and their motive . . . include[s] a desire to interfere and disrupt the others'

prospective economic business advantage." *Loven v. Church Mut. Ins. Co.,* 452 P .3d 418, 426 (Okla. 2019) (emphasis added). In other words, a tortious interference with prospective economic advantage claim "requires a showing of bad faith." *Id.* at 420.

As a preliminary matter, Plaintiffs ignore State Farm's "right to terminate this [Agent's] Agreement *at any time with or without reason.*" (Exhibit 1, at 3-4) (emphasis added). Simply put, Plaintiffs had no valid expectancy of prospective economic advantage from State Farm customers because the Agent's Agreement could end at any time. Moreover, as discussed in more detail above, State Farm cannot unlawfully interfere with its own business relationship with Plaintiffs or in its business relationships with State Farm customers.

Plaintiffs have also failed to allege State Farm improperly acted for the *sole* purpose of intentionally interfering with their prospective economic business advantage (which, as explained above, Plaintiffs could not have had by virtue of the at-will nature of the Agent's Agreement). Again, it is undisputed any alleged prospective customers would enter a contract to purchase *State Farm* insurance products. (Petition, ¶ 30). Both Plaintiffs and State Farm were beneficiaries of any relationships — prospective or otherwise — that Plaintiffs may have had with State Farm customers. Thus, under the same principles applicable to tortious interference with contract/business relations, State Farm as a matter of law could not have interfered with Plaintiffs' "prospective" interests involving *State Farm's* customers. Accordingly, Plaintiffs' claim for tortious interference with prospective economic advantage should be dismissed.

### C.     Plaintiffs Cannot State A Viable Claim For Defamation.

In their Petition, Plaintiffs allege State Farm "made numerous false and defamatory statements to third parties about Plaintiff Humphrey." (Petition, ¶ 53). Plaintiffs specifically claim State Farm "notified other insurance carriers that Plaintiff Humphrey 'inputted inaccurate information and failed to supervise team members related to the auto application process.'" (*Id.*). To state a claim for defamation against State Farm, Plaintiffs must establish: (1) a false and defamatory statement concerning Humphrey; (2) an unprivileged publication to a third party; (3) fault by State Farm amounting at least to negligence; and (4) either the actionability of the statement irrespective of special damages, or the existence of special damages caused by the publication. *Sturgeon v. Retherford Pubis, Inc.,* 987 P.2d 1218, 1223 (Okla. Civ. App. 1999). As discussed below, Plaintiffs' allegations are inconsistent regarding the truthfulness of State Farm's alleged defamatory statements and are insufficiently detailed to state a claim for defamation.

    1.     *Plaintiffs Have Not Sufficiently Pled A False And Defamatory Statement.*

A defendant accused of defamation may "[a]s a defense thereto . . . prove that the matter charged as defamatory was true." 12 Okla. St. § 1444.1 (2021); *see Melton v. City of Oklahoma City*, 928 F.2d 920, 929 (10th Cir. 1991). Plaintiffs' Petition alleges State Farm "intended to audit [Humphrey] and one of her team members' quote activity from 2018 and 2019." (Petition, ¶ 58). The Petition further admits Humphrey accepted blame, in writing, for "ghost quoting," which "resulted in multiple credit reports being run on the

potential leads." *(Id., ¶¶ 59-61).* Plaintiffs, based on their own allegations, concede State Farm audited HIFS; that Humphrey admitted to wrongdoing' and that Plaintiffs resisted compliance (contrary to the terms of the Agent's Agreement) with State Farm's procedures and processes. Thus, any defamation claim based on State Farm's purported statements to other insurance carriers regarding termination of Plaintiffs' Agent's Agreement for engaging in the dishonest practice of running multiple credit reports for potential clients in violation of State Farm procedures and processes is *not* actionable because such statements – as described on the face of the Petition – are substantially true. Moreover, even assuming *arguendo* that there were minor inaccuracies in State Farm's alleged statements to third parties, they would still not be actionable because the substance or gist of the statements is true—that Plaintiffs' Agent's Agreement was terminated for compliance issues. *Cf. In re Amendments to the Okla. Unif. Jury Instructions — Civ. (Second),* 2014 OK 17, Instruction No. 28.3 (2014) ("[M]inor inaccuracies do not amount to falsity if the statement is substantially true . . . ."); *Schwartz v. Am. College of Emergency Physicians,* 215 F.3d 1140, 1146 (10th Cir. 2000) ("It has long been accepted that 'truth is an affirmative defense to an action for defamation.' The law of defamation overlooks inaccuracies and focuses on substantial truth.") (citations omitted).

    2.  *Plaintiffs Also Fail To Allege That The Statements Were Unprivileged.*

Plaintiffs' defamation claim also should be dismissed in its entirety because the Petition fails to sufficiently allege State Farm's alleged statements were unprivileged communications to a third party. State Farm's purported notice to other insurance carriers

of potential wrongdoing by Plaintiffs does not support Plaintiffs' claim for defamation because, assuming *arguendo* that any such notice was provided, it would be a privileged statement under Oklahoma law.[4] Specifically, State Farm's alleged disclosure regarding Plaintiffs' conduct involved "information that affected an important interest of [other insurance carriers]," and was a statement made to a prospective principal in a principal/agent relationship with Plaintiffs. *See In re Amendments to the Okla. Unif. Jury Instructions - Civ. (Second),* 2014 OK 17, Instruction No. 28.8 (2014); *see also Fawcett Publications, Inc. v. Morris,* 377 P.2d 42, 52 (Okla. 1962) (holding that, as a general rule, a qualified privilege applies in cases where "some special private relationship has been involved, such as fraternal, fiduciary, business, or professional"); *Thornton v. Holdenville General Hosp.,* 36 P.3d 456, 461 (Okla. Civ. App. 2001) ("A conditional privilege attaches to statements, which would ordinarily be defamatory, made in good faith on a subject in which the

---

[4] Presumably Plaintiffs' allegation in Petition ¶ 53 refers to a mandatory report submitted by State Farm to the Oklahoma Department of Insurance, although the language quoted in paragraph 53 does not appear in the report. State Farm denies any allegation it discussed Humphrey with other insurance carriers, and the Petition is impermissibly vague in that regard as Plaintiff fails to identify any such carriers. Moreover, State Farm's communication to the Oklahoma Department of Insurance would also be considered a privileged statement and cannot form the basis of a defamation claim. *See* 36 Okla. St. § 363(B) (2021) ("No insurer, employee or agent of an insurer, or any other person acting in the absence of fraud, bad faith, reckless disregard for the truth, or actual malice shall be subject to civil liability for libel, slander or any other relevant tort or subject to criminal prosecution by virtue of filing of reports or furnishing other information either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department or the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General pursuant to subsection A of this section or to any other agency involved in the investigation or prosecution of suspected insurance fraud.")

speaker has an interest or in reference to which he has or honestly believes he has a duty to perform."); *cf. Restatement (Second) of Torts* § 595, comment i (1977) ("Under many circumstances, a former employer of a servant is conditionally privileged to make a defamatory communication about the character or conduct of the servant to a present or prospective employer" if the statements were "made for the purpose of enabling that person to protect his own interests and they must be reasonably calculated to do so.").

Moreover, Plaintiffs' Petition is devoid of any details regarding the identity of the alleged State Farm personnel who made defamatory statements to unnamed insurance carriers. Plaintiffs therefore fail to allege State Farm authorized any individuals under its control to make such statements or that State Farm personnel made defamatory statements within the scope of their employment. Indeed, the Petition lacks *any* information as to publication of the alleged defamatory statements *(e.g.*, whether the communications were oral or written). For this reason and the reasons described above, Plaintiffs have failed to sufficiently allege the elements of their defamation claim, and the claim should be dismissed. *See, e.g., Lockhart v. Loosen,* 943 P.2d 1074, 1078 (Okla. 1997) ("Under most circumstances a plaintiff's petition is . . . dismissible . . . for insufficient facts under the advanced theory.").

## IV. <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' claims against State Farm for tortious interference with contract/business relations, tortious interference with prospective economic advantage, and defamation should be dismissed in their entirety, *with prejudice,*

for failure to state a plausible legal claim and for their inability to be cured by subsequent amendment to the Petition.

WHEREFORE, State Farm respectfully requests that the Court grant State Farm's Motion for Partial Judgment on the Pleadings.

Respectfully submitted,

*/s/ Lance E. Leffel*
Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK  73102
PH: (405) 235-5500; FAX:  (405) 235-2875
*lleffel@gablelaw.com*

David A. Hughes
*(admitted pro hac vice)*
JACKSON LEWIS P.C.
171 17th Street, NW, Suite 1200
Atlanta, Georgia 30363
PH: (404) 525-8200; FAX: (404) 525-1173
David.Hughes@jacksonlewis.com

Tracey R. Wallace
*(admitted pro hac vice)*
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, TX  75201
PH: (214) 520-2400; FAX: (214) 520-2008
Tracey.wallace@jacksonlewis.com

Claire L. Cook
*(admitted pro hac vice)*
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, TX  75201

PH: (972) 728-3295; FAX: (214) 785-6908
Claire.cook@jacksonlewis.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

R. Greg Andrews, OBA No. 19037
Matthew B. Eckstein, OBA No. 19087

*Attorneys for Plaintiff*

/s/ Lance E. Leffel