**36-2541**
**Form AA05 (INC)**

# STATE FARM AGENT'S AGREEMENT

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM LIFE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, and STATE FARM GENERAL INSURANCE COMPANY, collectively referred to in this Agreement as "we," "us," "State Farm," or "the Companies," insurance corporations organized and existing under the laws of the State of Illinois, with their principal offices located at Bloomington, Illinois, appoint Humphrey Insurance and Financial Services Inc, a corporation organized and existing under the laws of the State of Oklahoma, with its office located at Edmond, Oklahoma, referred to in this Agreement as "the Agent," to represent the Companies in Oklahoma, while properly licensed so to act, in accordance with the provisions of this Agreement. Courtney R Humphrey shall be the President of the Agent and is referred to in this Agreement as "the President" and the President shall be the chief executive officer of the Agent. Schedules of Payments Forms applicable to this AA05 INC and the respective company as indicated hereto attached, constitute a part of this Agreement. This Agreement is to become effective December 01, 2018, and shall continue until terminated as herein provided.

## PURPOSE

The purpose of this Agreement is to set forth the objectives, obligations, and responsibilities essential to the relationship between the Agent, its officers and employees, the President and State Farm. It is to our mutual interest to serve the insuring and investing public, to comply with all applicable laws, including maintaining applicable licenses for all products State Farm offers, to increase business on a profitable basis, and to maintain the Companies financial strength to protect customers' interests.

The Companies' agents operating as independent contractors, within the scope of their authority, are best able to provide the creative solicitation, professional counseling, and prompt and skillful service essential to the creation and maintenance of successful multiple-line Companies and agencies. We do not seek, and will not assert, control of Agent's officers' or licensed sales representatives', or the President's daily activities, but expect them to exercise their own judgment as to the time, place, and manner of soliciting insurance, servicing customers, and otherwise carrying out the provisions of this Agreement.

State Farm makes available to the Agent's officers and licensed sales representatives the experience and technical knowledge acquired and developed over the years with respect to soliciting, underwriting, and servicing insurance and financial service products. We will provide the Agent, through our personnel, with information and guidance as to the operation, conduct, and financial management of the agency; and from time to time we will designate specific employees to offer advice to the Agent's officers and licensed sales representatives on the activities of the Agent. The President will be invited to attend meetings for the purpose of introducing new products, ideas, services and procedures, promoting sales, and furnishing the Agent with assistance, guidance, and consultation.

The Companies and the Agent expect that by entering into this Agreement, and by the full and faithful observance and performance of the obligations and responsibilities herein set forth, a mutually satisfactory relationship will be established and maintained.

To these ends, the Companies and the Agent and the President agree:

## SECTION I - OBLIGATIONS

A. The Agent will solicit applications for insurance and financial services, collect premiums, fees and charges,

EXHIBIT
1

countersign and deliver policies, reinstate and transfer insurance, assist customers, and cooperate with Company representatives in reporting and handling claims.

B. This is a Principal-Agent relationship. As a State Farm agent, the Agent's obligations and duties include, but are not limited to, following State Farm procedures and processes, providing prompt, friendly, accurate, and cost effective service, avoiding conflicts of interest, cooperating with and advancing the interests of the Companies, the agents, the policyholders and the customers. The President shall also have obligations and duties to State Farm, including but not limited to, following State Farm procedures and processes, providing prompt, friendly, accurate, and cost effective service, avoiding conflicts of interest, cooperating with and advancing the interests of the Companies, the agents, the policyholders and the customers.

C. The officers and licensed sales representatives of the Agent and the President have full control of their daily activities, with the right to exercise independent judgment as to time, place, and manner of offering financial services, soliciting insurance, servicing customers, and otherwise carrying out the provisions of this Agreement.

D. Insurance and financial services are closely regulated businesses. The Agent and the President must deal appropriately with policyholders and customers in all transactions, be trustworthy in handling money, avoid false advertising and unfair practices, and otherwise comply with all laws and regulations. As part of the Agent's obligations under this agreement, State Farm will require the President to attend an annual compliance or ethics related training program conducted or approved by State Farm.

E. State Farm will furnish the Agent, without charge, manuals, forms, records, computer-related and electronic files, equipment, and such other materials, supplies, and services as we may specify from time to time. All such property furnished by us shall remain the property of the Companies. In addition, State Farm will offer at the Agent's expense additional equipment, materials, supplies and services.

F. Information regarding names, addresses, and ages of customers of the Companies; the description and location of insured property; expiration or renewal dates of State Farm policies, and account and investment information acquired or coming into the Agent's possession during the effective period of this Agreement, or any prior Agreement, except information and records of policyholders insured through any governmental or insurance industry plan or facility, are trade secrets and confidential business information wholly owned by the Companies. All forms, computer-related and electronic files, and other materials, whether furnished by State Farm or purchased by the Agent, upon which this information is recorded shall be the sole and exclusive property of the Companies. The Agent's possession of this information is only for use in carrying out the duties and responsibilities under this Agreement. The Agent and the President shall take all reasonable steps to maintain the value and confidentiality of such information, including informing the Agent's officers, employees, and licensed sales representatives of this responsibility, and assuring their compliance.

G. The expense of any office, including rental, furniture, and equipment; signs; supplies not furnished by us; the compensation of the Agent's employees; telephone; postage; advertising; and all other charges or expense incurred by the Agent in the performance of this Agreement shall be incurred at the Agent's discretion and paid by the Agent. The Agent agrees that in the location or relocation of its office there will be no undue infringement on the established office location of any other agent. The Agent agrees not to make any commitment to change office location without reasonable, at least 30 days, prior written notice to the Companies or establish any office in addition to the Agent's principal office without the prior approval of the Companies.

H. We will advertise, provide promotional materials, and participate in the cost of the Agent's advertising, in accordance with policies determined from time to time by us. The Agent will not use any advertisements referring to us or identifying us, directly or indirectly, without our prior approval.

I. The President of the Agent shall be a licensed sales representative of the Agent. The President of the Agent shall also be licensed in all locations where the Agent is licensed and in all locations where the Agent conducts business. The fulfillment of this Agreement will be the Agent's principal business and the President's principal occupation and requires the President's personal services. Neither the Agent, the President, nor any licensed sales representative of the Agent will directly or indirectly offer financial services or write or service insurance for any other company, other than a State Farm subsidiary or affiliate or through any governmental or insurance industry plan or facility, or for any agent or broker, except in accordance with the terms of any written consent we may give the Agent.

J. We will leave in the Agent's account all policies and

financial services accounts credited to thereto so long as the customer resides within a 75-mile radius of the Agent's principal place of business and within a State in which the Agent is duly licensed, except that we may, after prior written notice to the Agent, transfer any policy or account to the account of another State Farm agent when the customer makes a bona fide request in writing. The Agent and the President will respect the rights and interests of other agents in policies and accounts credited to them by refraining from raiding or otherwise diverting policies or accounts from them. The Agent and the President shall neither directly nor indirectly attempt to divert policies or accounts from unassigned accounts or from those of other State Farm agents, or the Agent's own account to the accounts of other State Farm agents.

K. All funds collected on behalf of the Companies shall be held in trust by the Agent as the absolute property of the Companies, and the Agent will be responsible for these funds until they are safely transmitted to the Companies. The Agent agrees to maintain a premium fund account for State Farm's benefit in a bank or similar financial institution, which we may audit at any time, in which the Agent will promptly deposit all funds collected for State Farm premiums, fees or charges. The Agent further agrees to transmit all such funds and all insurance applications promptly as directed by State Farm.

L. Any amount (exclusive of premiums due on policies issued to the Agent and the President) at any time owing by the Agent or President to any of the Companies, their subsidiaries and affiliates, shall be a first lien on any payment due or thereafter becoming due the Agent under any of the provisions of this Agreement, and the Companies are authorized to deduct such indebtedness from any such payment due or thereafter becoming due to the Agent from the Companies.

M. If any application or account is rejected or any policy is surrendered or canceled, in whole or in part, for any reason, before the expiration of the policy period, or if any premium is reduced or an overpayment made to the Agent, the compensation paid to the Agent on the amount returned or credited to the policyholder or the amount overpaid to the Agent shall be charged to the Agent and shall constitute an indebtedness of the Agent to the Companies.

N. We retain the right to prescribe: all accounts and policy forms and provisions; premiums, fees, and charges for insurance and financial services; rules governing the binding, acceptance, renewal, rejection, or cancellation of risks, and adjustment and payment of losses; and limitations on the submission of applications by individual agent, by market area, by line of coverage, by policy type, by account type, by Company, or by other means.

O. Neither the Agent nor the President will represent themselves as having any powers except those authorized by this Agreement and subject to any applicable law. Without limiting the foregoing, neither the Agent nor the President shall have the authority to extend the time of payment of any premium, or to alter, waive, or forfeit any of the Companies' rights, requirements, or conditions in any policy of insurance, or otherwise obligate the Companies in any way except as stated in this Agreement or expressly authorized under the rules and regulations of the Companies or as otherwise authorized in writing by the Companies.

P. The Agent is responsible for the recruitment, selection, compensation, management, and control of the Agent's employees. The Agent is responsible for the employee's activities and ensuring that all employees are properly licensed and authorized for the activities they undertake on the Agent's behalf. The Agent's employees must obtain proper authorization from each Company prior to binding risk or incurring liability on behalf of each Company. Each Company reserves the right to fix and determine procedures for obtaining and maintaining proper authorization for the Agent's employees.

## SECTION II - COMPENSATION

A. Each Company will make payments to the Agent as set forth in the applicable Schedule of Payments.

B. State Farm will maintain life insurance in the amount of $100,000 on the life of the President, payable to the beneficiary selected by the Agent, so long as this Agreement has not been terminated and the President has not attained age 70.

C. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, and STATE FARM GENERAL INSURANCE COMPANY will make additional compensation payments to the Agent under any applicable schedule based on the Agent's achievement of standards of quality of agency operation, or insurance production.

D. Each Company reserves the right to fix and determine the amount, extent, and conditions of any bonuses, awards, prizes, and allowances.

## SECTION III - TERMINATION OF

**AGREEMENT**

A. This Agreement will terminate upon the death of the President. The Agreement will also terminate upon any change of the identity of the President or if the President's ownership interest of the Agent falls below 51 percent. Either the Agent or State Farm have the right to terminate this Agreement at any time with or without reason by providing written notice delivered to the other or mailed to the other's last known address. The date of termination shall be the date specified in the notice, but in the event no date is specified, the date of termination shall be the date of delivery if the notice is delivered, or the date of the postmark, if the notice is mailed. Either the Agent or State Farm can accelerate the date of termination specified by the other by giving written notice of termination in accordance with this paragraph.

B. After termination of this Agreement the Agent and President agree not to act or represent themselves in any way as an agent or representative of the Companies.

C. Within ten days after the termination of this Agreement, all property belonging to the Companies shall be returned or made available for return to the Companies or their authorized representative.

D. For a period of one year following termination of this Agreement, the Agent and the President will not either personally or through any other person, agency, or organization solicit any customer credited to the Agent's account at the date of termination to purchase any insurance coverage or financial services product competitive or comparable with the insurance coverages or products sold or offered by the Companies. In the event the "period of one year" conflicts with any statutory provision, such period shall be the period permitted by statute.

**SECTION IV - ANNUAL INVESTMENT PROGRAM**

To assist the Agent in investing for the period following termination of this agreement, the applicable Companies will make annual investment payments directly to the Agent as set forth below:

A. After the President is a licensed agent for the Companies, or a licensed sales representative of the Agent for sixty (60) months either under this Agreement or any combination of this Agreement and a prior State Farm Agent's Agreement or Local Agent's Appointment, and for so long as this Agreement is in force and for up to two hundred forty (240) calendar months, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, and STATE FARM GENERAL INSURANCE COMPANY will pay the Agent an annual investment payment.

B. Beginning with the month after the Agent or President has qualified pursuant to IV.A. above and continuing until the earlier of the month in which this Agreement terminates or the maximum of two hundred forty (240) calendar months is reached, an annual investment payment will be made within a reasonable period after the end of each calendar year. The amount of each Company's payment will be five percent (5%) of production earnings paid the Agent by that Company in the applicable months of the prior year.

C. For purposes of determining the amount of any annual investment payment, the "production earnings" paid shall include:

1. compensation provided in applicable Schedules of Payment for policies of State Farm Mutual Automobile Insurance Company, including health insurance policies, other than compensation as described in Section II.A. of the Schedules;

2. compensation provided in applicable Schedules of Payment for policies of State Farm Fire and Casualty Company and State Farm General Insurance Company, other than compensation as described in Section II.A. of the Schedules;

3. any compensation provided by a Schedule of Compensation as described in Section II. C.; and

4. any Legion of Honor bonus, regional production bonus, or other incentive compensation designated for inclusion in "production earnings" from time to time in the publication of the Companies' Annual Agency Programs.

**SECTION V - TERMINATION PAYMENTS**

In the event this Agreement is terminated, the STATE FARM LIFE INSURANCE COMPANY will pay the Agent,

A. On business written by the Agent under the applicable Life Schedule of Payments:

1. any remaining writing compensation for the first through fifth policy years as would have been due and payable to the Agent if this Agreement had

not been terminated; and

2. if on the date of termination the President has been a licensed agent for the Companies, or a licensed sales representative of the Agent for five (5) or more years of combined service as an agent under this Agreement and any prior State Farm Agent's Agreement or Local Agent's Appointment, any remaining writing compensation for the sixth through fifteenth policy years as would have been due and payable to the Agent if this Agreement had not been terminated; and

B. If on the date of termination the President has been a licensed agent for the Companies, or a licensed sales representative of the Agent for twenty five (25) or more years of combined service as an agent under this Agreement and any prior State Farm Agent's Agreement or Local Agent's Appointment, on business then credited to the Agent's account on which service compensation is being paid the Agent,,

1. on traditional ordinary policies on which the Agent's service compensation rate is three percent (3%), a monthly amount equal to two percent (2%) of one-twelfth (1/12) of the annualized premium of any such policy;

2. on traditional ordinary policies on which the Agent's service compensation rate is two percent (2%), a monthly amount equal to one and one-half percent (1 1/2%) of one-twelfth (1/12) of the annualized premium of any such policy;

3. on Flexible Premium Retirement or Deferred Life Annuity policies, a monthly amount equal to three-fourths of one percent (3/4 of 1%) of an average monthly premium of any such policy; and

4. on Universal Life or Second to Die policies, a monthly amount equal to one and one-half percent (1 1/2%) of an average monthly premium of any such policy

beginning the last day of the month following the month in which you separate from service with State Farm and until the last day of the month in which the Presidents death occurs; except that no amount shall be paid on any policy made available for assignment by the termination of an agreement between the Company and an agent or by a release of policies pursuant to the applicable paragraph of Section IV of another State Farm Agent's Agreement, and except that if the President were less than sixty five (65) years of age on the date of termination of this Agreement, amounts shall be reduced actuarially based on the President's lower age.

C. The "average monthly premium" of a policy shall be calculated by dividing the total premium paid on the policy by the number of full months elapsing between its Policy Date and termination of this Agreement, except that the "average monthly premium" for a policy in force less than sixty (60) months shall be no greater than:

1. for a Universal Life policy or Second to Die policy, one-twelfth (1/12) of the total Primary Compensation Premium paid on the base policy and any increases to base and added riders, and

2. for a Deferred Life Annuity policy, two hundred dollars ($200).

D. The "annualized premium" of a policy shall be the amount of the premium payment of the policy multiplied by the number of payments per policy year for the premium payment mode applicable when this Agreement is terminated.

E. At any time the Company owes for each of three (3) consecutive periodic payments in this Section, less than one hundred dollars ($100), the Company may, in its sole discretion, make a single sum payment of the present value of such future amounts. The payment amount shall reasonably consider the time value of money and any influence of policy persistency, agent mortality, and other factors relevant to the payment frequency and amounts otherwise provided herein. If the present value exceeds the limit set forth in Internal Revenue Code Section 402(g), periodic payments will continue.

F. The new Deferred Annuity and the new Single Premium Immediate Annuity with Choice of Certain Period are not eligible for Termination Payments.

**SECTION VI –GENERAL PROVISIONS**

A. This Agreement has been entered into by the Companies with the Agent and the President in reliance upon the representations and agreements that:

1. The identity of the President will not change.

2. The President participates in the ownership of the Agent with a 51 percent or greater ownership interest.

3. The President shall be the chief executive officer of the Agent and shall have full managerial authority and responsibility for the operating management of the Agent as provided in the Agent's bylaws.

B. Since State Farm is relying on the Agent and the President to carry out the provisions of this Agreement, neither the Agreement nor any interest thereunder can be sold, assigned, or pledged by the Agent or the President; and no right in any sum due or to become due to the Agent hereunder can be sold, assigned, or pledged without prior written consent of the Companies.

C. Each Company shall be bound by all terms of this Agreement, except that the separate Schedules of Payments hereto attached, and those other provisions where the express language or context indicates that they are applicable to a particular Company only, shall be applicable to the individual Company only; and the rights and duties of the Agent with respect to each Company shall be governed accordingly.

D. The President in his/her individual capacity shall be bound by all terms of this Agreement.

E. All payments for termination which otherwise might have become payable to the Agent or the President under the terms of prior agreements with any of the Companies are hereby waived by the Agent and the President.

F. This Agreement supersedes all prior commitments, inducements, promises, negotiations, representations, obligations, conditions, or agreements, oral or written, between State Farm, its representatives, the Agent and the President, except with respect to compensation owing the Agent under Schedules of Payments under the Agent's immediate preceding State Farm Agent's Agreement, if any, and with respect to compensation overpayments or any other amounts the Agent owes State Farm.

G. This Agreement constitutes the sole and entire Agreement between the parties hereto, and no change, alteration, or modification of the terms of this Agreement may be made except by agreement in writing signed by an authorized representative of the companies and accepted by the Agent and the President.

**36-2541**
**Form AA05 (INC)**

WHEREOF, the Companies have caused this Agreement to be executed on their behalf by their authorized representative, to be effective on the date above set out at the beginning of the contract hereof, upon its acceptance in writing by the Agent.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
STATE FARM LIFE INSURANCE COMPANY
STATE FARM FIRE AND CASUALTY COMPANY
STATE FARM GENERAL INSURANCE COMPANY

DocuSigned by:
Brian Maxwell
By: 335D657DC76E46D...
Authorized Representative (signature)

WHEREOF, I hereby execute State Farm Agent Agreement Form AA05 (INC), dated December 01, 2018, and attached Schedules of Payments Forms applicable to AA05 (INC) and the respective Company as indicated, constituting the entire agreement by each Company as set forth therein all of which I hereby acknowledge that I have read and understand.

Humphrey Insurance and Financial Services Inc
Name of Corporation

DocuSigned by:
Courtney R Humphrey
By: C1C7828CEF6F435...
President (signature)

WHEREOF, I hereby execute State Farm Agent Agreement Form AA05 (INC), dated December 01, 2018, and attached Schedules of Payments Forms applicable to AA05 (INC) and the respective Company as indicated, constituting the entire agreement by each Company as set forth therein all of which I hereby acknowledge that I have read and understand.

DocuSigned by:
Courtney R Humphrey
By: C1C7828CEF6F435...
Individually (signature)