# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

HUMPHREY INSURANCE AND FINANCIAL )
SERVICES INC., an Oklahoma corporation; and )
COURTNEY HUMPHREY, an Individual, )
)
        Plaintiffs, ) Case No.: 5:22-cv-00977-SLP
)
  v. )
)
STATE FARM MUTUAL AUTOMOBILE INS., )
CO.; STATE FARM LIFE INSURANCE CO.; )
STATE FARM FIRE AND CASUALTY CO.; )
STATE FARM GENERAL INSURANCE CO., )
a collection of foreign insurance companies; and )
CLARENCE HOLLEY, an individual. )
)
        Defendants. )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT

COME NOW the Plaintiffs, Humphrey Insurance and Financial Services Inc. ("HIFS") and Courtney Humphrey ("Humphrey") (HIFS and Humphrey are collectively referred to herein as "Plaintiffs"), and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, hereby respond to Defendants' Motion for Partial Judgement on the Pleadings ("Motion for Judgment"). In support of this Response, the Plaintiffs state as follows:

## BRIEF PROCEDURAL HISTORY OF THE CASE

1. On April 1, 2021, Plaintiffs filed their Petition against the State Farm Defendants with the Canadian County Court Clerk. The case was assigned to the Honorable Paul Hesse. (*See*, Petition, attached hereto as **Exhibit 1**).

2.    On May 17, 2021, the State Farm Defendants filed a Motion for Partial Dismissal and Incorporated Memorandum of Law ("Motion to Dismiss") against Plaintiffs' Petition.  Defendants' Motion to Dismiss sought to dismiss the same claims that Defendants now seek judgment on the pleadings.[1]  (*See*, Motion to Dismiss, attached hereto as **Exhibit 2**).

3.    On August 4, 2021, the Honorable Paul Hesse issued an Order denying Defendants' Motion to Dismiss. (*See*, Order Denying Motion to Dismiss, attached hereto as **Exhibit 3**).

4.    Between August 4, 2021 and November 15, 2022, the date in which Defendants removed this matter from Canadian County District Court to this Court, the parties engaged in the exchange of written discovery that included motions to compel being filed with and heard by the court.  At the time of the removal by Defendants, the parties were engaged in good faith discussions concerning Defendants lack of discovery production in response to Plaintiffs' discovery requests.  Within the parties' Joint Status Report and Discovery Plan ("JSR and DP") [DOC. NO. 16], filed on December 29, 2022, the parties stipulated to the use of all discovery exchanged during the state court proceeding. (*See*, Section 8(F), JSR and DP, DOC. NO. 16). Plaintiffs further notified the Court within the JSR and DP that they anticipate the need to file a Motion to Compel with the Court to address discovery issues that were pending in the state court matter prior to the removal by Defendants as Defendants have notified Plaintiffs that they are

---

[1] With the exception of those claims in the Petition against Defendant, Clarence Holley

standing on numerous objections made to Plaintiffs' discovery requests. (*See*, Section 6(A), JSR and DP, DOC. NO. 16).

5.      On December 29, 2022, this Court entered its Scheduling Order (DOC. NO. 17], which provided the parties thirty (30) days, or until January 30, 2023, to join additional parties and amend pleadings. (*See*, Scheduling Order, DOC. NO. 17).

<u>**STATEMENT OF THE CASE**</u>

On December 1, 2018, Plaintiff HIFS and the State Farm Defendants entered into an agent contract titled "State Farm Agent's Agreement" which, according to the terms therein, appointed Plaintiff Humphrey as "an Agent" to represent the State Farm Defendants in Oklahoma. Under the Agent Agreement, Plaintiffs are identified as an independent contractor with the power of full control over daily activities, with the right to exercise independent judgment as to time, place, and manner of offering services and otherwise carrying out the provisions of the Agent Agreement. However, in practice, the State Farm Defendants required Plaintiffs to follow State Farm's procedures and processes, contrary to the purported authority of independence. The State Farm Defendants also wrongfully interfered with Plaintiffs' authority for employees of Plaintiffs' Agency. Plaintiffs allege the State Farm Defendants engaged in activity contrary to the terms of the Agent Agreement.

---

("Holley"), as Plaintiffs' dismissed those claims without prejudice on October 14, 2022.

The State Farm Defendants took, moved, or transferred clients and customers from Plaintiffs' agency to other State Farm agencies without justification and without following the proper procedures. At the time of the State Farm Defendants' wrongful actions, Plaintiffs had established significant prospective business relationships with clients, both established and potential, and maintained contracts and/or agreements with those clients. Plaintiffs had an expectation of business continuation through those established clients and prospective economic opportunities through securing and serving future clients. Plaintiffs allege the State Farm Defendants engaged in activity that wrongfully interfered with their contractual/business relationships with those clients, as well as wrongfully interfered with their prospective economic advantage.

After the State Farm Defendants wrongfully terminated the Agent Agreement, they made numerous false and defamatory statements to third parties about Plaintiff Humphrey. Plaintiffs sufficiently pled those facts in the Petition. Plaintiffs allege that the defamatory statements made by the State Farm Defendants were neither true nor privileged.

## ARGUMENTS AND AUTHORITIES

**I. THE 12(C) STANDARD.**

Rule 12(c) of the Federal Rules of Civil Procedure states a motion for judgment on the pleadings must be made "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, courts apply the same standard as a

Rule 12(b)(6) motion. *Turner v. City of Tulsa*, 525 F. App'x 771. 772 (10th Cir. 2013) (unpublished) (*citing Park Univ. Enter., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Additionally, courts will "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id*. A motion for judgment on the pleadings "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. *Id*.

Although submitted as a "Motion for Partial Judgment on the Pleadings" pursuant to Rule 12(c), Defendants' Motion for Judgment essentially argues that there is no legally cognizable claim asserted against Defendants by Plaintiffs' Petition. When reviewing such a motion, the Court should review the same under the standards applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Ramirez vs. Department of Corrections*, 222 F.3d 1238 (10th Cir 2000); *See, also, Wright & Miller, Federal Practice and Procedure* 3d, §1367 at p. 218. Accordingly, the Court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. Judgment on the pleadings is not a favored motion and shall not be granted by the Court unless it is clear that there are no disputes about the material facts and that the movant is entitled to judgment as a matter of law. *Lambert vs. Inryco, Inc.*, 569 F.Supp. 908 (W.D. Okla. 1980). In fact, a motion to dismiss must be denied if the court determines that the allegations support relief on <u>any</u>

possible theory. *In re Longhorn Securities Litigation*, 573 F.Supp. 278, 280 (W.D. Okla. 1983).

Under these standards, the lack of any dispute about material facts and the movant's entitlement to judgment as a matter of law are of equal importance. It is against the backdrop of these stringent standards that this Court must review Defendants' Motion for Judgment. As discussed below, construing the Petition in a light most favorable to Plaintiffs and accepting as true all well-pled factual allegations and reasonable inferences therefrom, Defendants have failed to establish <u>beyond any doubt</u> that Plaintiffs can prove <u>no set</u> of facts which would entitle Plaintiffs to relief on <u>any possible theory</u>. As is shown below, Defendants' Motion for Judgment fails to meet these standards.

II.  **DEFENDANTS' PROPOSITION III(A) SHOULD BE DENIED BECAUSE DEFENDANTS HAVE FAILED TO SHOW <u>BEYOND ANY DOUBT</u> THAT PLAINTIFFS CAN PROVE <u>NO SET OF FACTS</u> TO ESTABLISH THEIR CLAIM AGAINST DEFENDANTS SOUNDING IN INTERFERENCE WITH CONTRACT/BUSINESS RELATIONS.**

The Federal Rule of Civil Procedure 8(a)(2), does not require a plaintiff to set out in detail the facts upon which the claim is based. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also, Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (stating a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"); and *Bell Atlantic Corporation, et al. v. Twombly*, 550 U.S. 544, 555, 127

S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (holding a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely").

Tortious interference with a contractual or business relationship requires the following allegations: (1) interference with an existing contractual or business right; (2) such interference was malicious or wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. *Eureka Water Co. v. Nestle Waters North America, Inc.*, 690 F.3d 1139, 1154 (10th Cir.2012)(*citing Wilspec Techs., Inc. v. DunAn Holding Grp., Co*., 2009 OK 12, ¶15, 204 P.3d 69, 74. The elements for this claim are also set out in OUJI 24.1 as follows: (1) plaintiff had a contract with a third party; (2) defendant knew about the contract; (3) defendant interfered with the contract, or made it impossible for the contract to be performed; (4) defendant's conduct was intentional; (5) defendant used improper or unfair means; and (6) plaintiff suffered damages as a direct result of defendant's actions. *See*, OUJI 24.1-Interference with Contract-Elements. Under both case law and the applicable jury instruction, and related authorities, Plaintiffs have stated a claim for tortious interference with contract in this case.

Defendants assert Plaintiffs' claim fails because of two reasons: First, Defendants cannot interfere with an existing contract or business relationship to which it was a party; and Second, that Plaintiffs do not allege sufficient facts of malicious intent for interference by Defendants. (*See* Defendants' Motion for Judgment, pp. 6-9). Plaintiffs

submit the instant claim can be brought against Defendants and has been properly, and sufficiently, pled.

First, Plaintiffs allege Defendants interfered with the contracts and business relationships between Plaintiffs and their clients. (*See*, pp. 6-7, ¶ 29-39, **Exhibit 1**). As alleged by Plaintiffs, their clients agreed to purchase insurance through them for the insurance products they offered. (*See*, p. 6, ¶ 30, **Exhibit 1**). Plaintiffs maintain a separate breach of contract action involving the Agent Agreement between Plaintiffs and Defendants. (*See*, pp. 2-6, ¶ 10-28, **Exhibit 1**). However, the instant claim arises from Defendants' improper actions and conduct related to the agreement between Plaintiffs and their clients, not any agreement that involved Defendants as a party. Plaintiffs allege that Defendants interfered with the contract, or made it impossible for the contract to be performed. (*See*, p. 6, ¶ 34, **Exhibit 1**). Plaintiffs allege that Defendants conduct was intentional, and that they used improper or unfair means to interfere with the contract, and that Plaintiffs suffered damages as a direct result of Defendants' actions. (*See*, pp. 6-7, ¶ 34-38, **Exhibit 1**). As such, all of the required elements of this claim have been properly pled by Plaintiffs.

Defendants improperly and contrary to the facts, assert that Plaintiffs did not have a direct contractual relationship with their customers. (*See* Defendants' Motion for Judgment, pp. 5-6). Under the Agent Agreement that Defendants cite, Plaintiffs are identified as an independent contractor with "full control of … daily activities, with the right to exercise independent judgment as to time, place, and manner" of offering

services and otherwise carrying out the provisions of the Agent Agreement. (*See*, p. 3, ¶ 13-14, **Exhibit 1**). Additionally, under that Agent Agreement Defendants "do not seek, and will not assert, control of your (Agent) daily activities." (*See*, p. 3, ¶ 13, **Exhibit 1**). Defendants' position may be more proper for eventual adjudication through a summary judgment challenge where a determination of what contracts/agreements exist in this fact pattern can be made as a matter of law. However, at this stage, Defendants challenge what has been alleged and Plaintiffs have alleged a contract/agreement that existed separate from Defendants. (*See*, pp. 6-7, ¶ 29-39, **Exhibit 1**). Had Plaintiffs not alleged a separate contract/agreement in the Petition, then Defendants' position would have merit.

Similarly, Plaintiffs have pled sufficient facts for finding malice and wrongful conduct by the Defendants. Plaintiffs do not simply allege that Defendants "pulled clients from their agency". Plaintiffs' Petition includes allegations that Defendants engaged in such conduct improperly, wrongfully, unfairly, and intentionally. (*See*, p. 7, ¶ 35, **Exhibit 1**). Plaintiffs further allege that Defendants' conduct was wrongful and malicious and acted with direct damage and injury to Plaintiffs' business, and that Defendants' interference was made with gross negligence or wanton or reckless disregard for Plaintiffs' rights. (*See*, p. 7, ¶ 35 and 38, **Exhibit 1**).

In the Petition, Plaintiffs allege that Defendants were aware of the contracts and agreements between Plaintiffs and their clients. (*See*, p. 6, ¶ 31, **Exhibit 1**). Defendants were also aware of the limitations on their interference with the same under the Agent Agreement that did control the conduct between Plaintiffs and Defendants. (*See*, p. 6-7, ¶

29-39, **Exhibit 1**).  Plaintiffs allege Defendants "unilaterally, intentionally, and without cause" engaged in certain conduct that was improper, unfair and caused direct damage to Plaintiffs. (*See*, p. 6-7, ¶ 33 and 35, **Exhibit 1**).

The above allegations clearly state a short and plain statement of Plaintiffs' claim against Defendants and gives them fair notice of the grounds upon which it rests.  Taken these allegations together and as true, Plaintiffs' Petition establishes that Plaintiffs had agreements with third parties, that Defendants acted intentionally, wrongfully, without justification and with knowledge of the direct financial harm resulting to Plaintiff from such actions.  Certainly, in light of the allegations set forth in the Petition, it is conceivable that Plaintiffs could prove a set of facts, which would entitle them to recover on their claim against Defendants.  Conversely, Defendants have wholly failed to establish beyond any doubt that Plaintiffs can prove no set of facts which would entitle Plaintiffs to relief on any possible theory.  While Defendants may prefer more detail when defending against such allegations, Plaintiffs' Petition states a claim and provides sufficient allegations to survive the pending Motion for Judgment and continue into discovery, which Defendants continue to refuse to cooperate and produce information requested by Plaintiffs that is essential to support their claims.  Accordingly, construing the Petition in a light most favorable to Plaintiffs, and accepting as true all well-pled factual allegations and reasonable inferences therefrom, Defendants' Motion for Judgment should be denied.

In addition to those items pled above, Defendants have wrongfully interfered with contracts between Plaintiffs and their employees, namely: Lori King; Larry Self; Courtney Harper; Chelsea Smithson; and Kaitlin Gowdy. By terminating the staff agreement and taking Plaintiffs' equipment, Defendants caused Plaintiffs to breach their contracts with those Plaintiffs' employees. Moreover, Defendants required Plaintiffs – an independent contractor - to terminate their contract with Lori King. Defendants were not a party to any of those contracts.

Defendants also wrongfully interfered with contracts between Plaintiffs and third-party vendors, namely: Mivation/Racing Snail; Everbrite/Superior Neon; and Health Care Services Corp. d/b/a Blue Cross Blue Shield Oklahoma ("BCBS"). Defendants' interference with the Mivation/Racing Snail contract took place during and after Plaintiffs were terminated. Defendants' interference with the Everbrite/Superior Neon and BCBS contracts took place after Plaintiffs were terminated. Defendants were not a party to any of those contracts.

During 2021, Defendants wrongfully transferred the agent-of-record on numerous customer policies/commissions/premiums (contracts) from Plaintiff HIFS to one of Defendants' agents, Ann Marie Smith, without the customer's knowledge and/or consent. These customers were not customers with Plaintiff HIFS during its relationship with Defendants, but rather began <u>after</u> Defendants wrongfully terminated the agreement with Plaintiffs. Again, Defendants wrongfully transferred customer policies between Plaintiffs and their customers that were formed <u>after</u> Defendants wrongfully terminated Plaintiffs.

Moreover, one of the customers that Defendants wrongfully transferred was Plaintiff Humphrey's individual health insurance policy, which was done not once, but multiple times by Defendants. To be clear, Plaintiff Humphrey purchased her individual health insurance policy through BCBS in December 2020 - <u>after her wrongful termination by Defendants</u> – yet Defendants continued to wrongfully transfer that policy to one of its own State Farm agents without Plaintiff Humphrey's knowledge or consent. Defendants cannot claim to be a party to that contract, or any of the similarly situated contracts identified above, as those contracts were written <u>after</u> Plaintiffs were wrongfully terminated by Defendants and were with a company other than State Farm, specifically BCBS.

## III. DEFENDANTS' PROPOSITION III(B) SHOULD BE DENIED BECAUSE DEFENDANTS HAVE FAILED TO SHOW <u>BEYOND ANY DOUBT</u> THAT PLAINTIFFS CAN PROVE <u>NO SET OF FACTS</u> TO ESTABLISH THEIR CLAIM AGAINST DEFENDANTS SOUNDING IN INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

Tortious interference with prospective economic advantage "usually involves interference with some type of reasonable expectation of profit." *Batton v. Mashburn*, 107 F.Supp.3d 1191, 1198 (W.D. OK 2015) (*citing Overbeck v. Quaker Life Ins. Co.*, 1984 OK CIV APP 44, 757 P.2d 846, 847–48). To prevail, a plaintiff must allege and prove "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." *Id.*

Tortious interference with prospective economic advantage requires the following allegations: (1) the existence of a valid business relation or expectancy; (2) defendant knew of the relationship or expectancy; (3) defendant interfered by inducing or causing a breach or termination of the relationship or expectancy; (4) defendant's conduct was intentional; (5) defendant used improper or unfair means; and (6) plaintiff suffered damages as a direct result of defendant's actions. *See Wilspec Techs., Inc. supra*, 2009 OK 12, ¶ 7, 204 P.3d at 71; OUJI 24.2. This claim is based on similar allegations as Plaintiffs' tortious interference with contract/business relations. However, there are distinct allegations that support this claim and require a denial of the pending Motion for Partial Dismissal.

Defendants claim that Plaintiffs must "specifically allege" that the "interference was the purpose of the tortfeasor's act", and that a tortious interference with prospective economic advantage claim "requires a showing of bad faith." (*See* Defendants' Motion, p. 9). Plaintiffs' Petition satisfies those elements by alleging "Defendants' interference was intentional inducing or causing a breach of termination of the relationship or expectancy. The State Farm Defendants purposely interfered with and disrupted Plaintiff HIFS's prospective economic business advantage because State Farm financially profits by terminating agents. (*See*, p. 8, ¶ 46, **Exhibit 1**).

In this case, Plaintiffs allege that prior to Defendants' wrongful actions, Plaintiffs agency had established significant prospective business relationships with clients, both established and potential. (*See*, p. 7, ¶ 42, **Exhibit 1**). By incorporation, Plaintiffs include

in this specific claim the allegations that Defendants knew of and were aware of the contracts and agreements between Plaintiffs and their clients and Defendants acted intentionally. (*See*, p. 6-7, ¶ 30, 33-35, and 45-51, **Exhibit 1**). A contract or agreement existed between Plaintiffs and their clients. Defendants were aware of these contracts/agreements and the Defendants acted intentionally in interfering with the same. The first, second and fourth elements of this claim are pled and sufficiently established.

Plaintiff further alleges that Defendants' interference was intentional and effectively shut down Plaintiffs' agency thereby ending Plaintiffs' prospective business operations. (*See*, p. 8, ¶ 45 and 46, **Exhibit 1**). Elements three, five and six of the claim have been established in these allegations. Defendants' conduct challenged in this lawsuit interfered with Plaintiffs' contracts/agreements with their clients. Plaintiffs have alleged that the actions of Defendants were improper and unfair. Finally, Plaintiffs set out specific allegations of direct financial harm and damage as a result of Defendants' conduct.

Taking these allegations together as true, each element of the claim for tortious interference with prospective economic advantage is established. Defendants' Motion for Judgment should be denied on this specific claim. Plaintiffs' Petition states a claim and provides sufficient allegations to survive the pending Motion for Judgment and continue into discovery, which Defendants continue to refuse to cooperate and produce information requested by Plaintiffs that is essential to support their claims.

**IV. DEFENDANTS' PROPOSITION III(C) SHOULD BE DENIED BECAUSE DEFENDANTS HAVE FAILED TO SHOW <u>BEYOND ANY DOUBT</u> THAT PLAINTIFFS CAN PROVE <u>NO SET OF FACTS</u> TO ESTABLISH THEIR CLAIM AGAINST DEFENDANTS SOUNDING IN DEFAMATION.**

"A communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas v. Pauls Valley Boomerang Diner, LLC, et al*., 320 F.Supp.3d 1253 (OK W.D. 2018) (*citing*, *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 22, 91 P.3d 673, 680.

In order to recover for defamation, a private figure must prove: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication. *Trice v. Burress*, 2006 OK CIV APP 79, ¶ 10, 137 P.3d 1253, 1257.  For purposes of satisfying the Oklahoma Pleading Code, Plaintiffs are not required to allege <u>and prove</u> defamation on the part of Defendants, but rather "a short and plain statement of the claim" that gives Defendants fair notice of Plaintiffs' claim and the grounds upon which it rests. *Niemeyer*, *supra*.

Plaintiffs' Petition satisfies the above requirements.  Plaintiff Humphrey is a private figure.  Plaintiffs' Petition clearly states Defendants made numerous false and defamatory statements to third parties about Plaintiff Humphrey when they notified other insurance carriers that Plaintiff Humphrey "inputted inaccurate information and failed to

supervise team members related to the auto application process." (*See*, pp. 9-10, ¶ 53, **Exhibit 1**). Plaintiffs' Petition further provides that statements by Defendants were false, and were known to be false by Defendants when made to third parties. (*See*, p. 10, ¶ 54, **Exhibit 1**). Lastly, Plaintiffs' Petition alleges that the false and defamatory statements made by Defendants have resulted in damage to Plaintiff Humphrey by her: (1) not being able to obtain lines of insurance from those insurance carriers; and (2) suffering mental anguish and emotional distress. (*See*, p. 10, ¶ 55, **Exhibit 1**).

Defendants seek to dismiss Plaintiffs' claim sounding in defamation based upon two reasons: (1) truth as a defense; and (2) privileged communication. Defendants are wrong on both fronts.

First, nowhere in Plaintiffs' Petition do Plaintiffs admit they "inputted inaccurate information" or "failed to supervise team members related to the auto application process." Also, nowhere in Plaintiffs' Petition do Plaintiffs admit they "did not comply with [Defendants'] procedures and processes. Plaintiffs have never admitted to doing anything wrong. Defendants' attempt to dismiss Plaintiffs' claim sounding in defamation based upon truth fails and should be denied.

Defendants' attempt to use privileged communications as a defense also fails as the authority cited by Defendants for said reporting immunity, Okla. Stat. tit. 36, § 363, only relates to suspected fraud. In fact, the section cited by Defendants is titled "Reporting Suspected Fraud – Grant of Immunity." *Id*. The allegations of defamation by Plaintiffs do not relate to suspected fraud, but rather the allegation of inputting inaccurate

information/failure to supervise. (*See*, pp. 9-10, ¶ 53, **Exhibit 1**). As such, Defendants' attempt to dismiss Plaintiffs' claim sounding in defamation based upon privileged communication fails and should be denied.

Lastly, Defendants attack Plaintiffs' Petition for failing to identify the specific employee from State Farm that made the defamatory statements about Plaintiffs to the other insurance carriers. At this stage of the litigation, Plaintiffs do not know the identity of every specific employee(s) that were responsible for entering that information. However, Plaintiffs pled with enough specificity by identifying Defendants, and have sought that information during the discovery process, which Defendants continue to object to and refuse to produce said information. Again, Plaintiffs are not required to allege and prove defamation on the part of Defendants, but rather "a short and plain statement of the claim" that gives Defendants fair notice of Plaintiffs' claim and the grounds upon which it rests. *Niemeyer*, *supra*.

Since the filing of the Petition, Plaintiffs have learned of and identified other defamatory statements made by Defendants that are part of Plaintiffs' defamation claim, which also included the names of specific individuals employed by Defendants. In response to Defendants' Interrogatory Nos. 15 and 16 (seeking information about Plaintiffs' defamation claim), Plaintiffs provided the following Answers, in pertinent part, as follows:

1. "Samantha Boyd [Defendants' employee] told a mutual friend, April Anderson, that Plaintiff was fired because she wrote life insurance on a terminal customer. Boyd was an agent at the time Plaintiff was fired, no longer a corporate employee and wouldn't have been privy to the reason for Plaintiff's termination";

2. "State Farm released non privileged information to Kirk Fuqua that came from internal messages between Plaintiff and her employee through email and instant message on State Farm Agent laptop";

3. "State Farm gave Plaintiff a clear compliance approval in July 2020 and told her to get licensed in Colorado, Texas, New Mexico, & Oklahoma, then turned around in December 2020 and told each state Department of Insurance that she was terminated for cause";

4. "State Farm told FINRA through U5 that Plaintiff inputted inaccurate information & failed to supervise team members"; and

5. "(former client) called Steve Manual's office [Defendants' employee], spoke with a man in the office, who said Plaintiff "was fired for stealing money and taking clients."

(*See*, Plaintiffs' Verified Answers to Interrogatory Nos. 15 and 16, attached hereto as **Exhibit 4**).

In addition to the above, since this matter was transferred to this Court, Plaintiffs identified within separate portions of the parties' JSP and DP that, "after the State Farm Defendants wrongfully terminated the Agent Agreement, they made numerous false and defamatory statements to third parties about Plaintiff Humphrey, which included: notifying other insurance carriers that Plaintiff Humphrey "inputted inaccurate information and failed to supervise team members related to the auto application process"; and telling clients being improperly moved by State Farm away from Plaintiff HIFS that Plaintiff Humphrey was fired for stealing money, stealing clients from other agents, and for writing life insurance on a terminal child." (*See*, Sections 1(A) and 4(a)(24-26), JSR and DP, DOC. NO. 16).

Therefore, Defendants' Motion for Partial Dismissal should be denied.

## V. ALTERNATIVELY, PLAINTIFFS SHOULD BE ALLOWED LEAVE TO AMEND THEIR PETITION.

Plaintiffs' Petition clearly complies with the minimal requirements of the Federal Rules of Civil Procedure and, in fact, it contains greater detail and specificity than is required by federal law. Since the Court cannot find, beyond any doubt, that Plaintiffs can prove no set of facts which would support a claim for relief, Defendants' Motion for Judgment should be denied. Alternatively, should the Court determine that the Petition is somehow deficient in some specific respect, Plaintiffs requests leave of Court to file an amended petition in order to address the Court's concerns and correct any perceived deficiencies. Rule 12(c) of the Federal Rules of Civil Procedure states a motion for judgment on the pleadings must be made "after the pleadings are closed - but early

enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to the Court's Scheduling Order [DOC. NO. 17], the deadline to amend pleadings is January 30, 2023. As Plaintiffs are filing this Response within the Court's allotted time to seek leave to amend their Petition, Plaintiffs requests leave of Court to file an amended petition in order to address the Court's concerns and correct any perceived deficiencies, if applicable.

## VI. PLAINTIFFS ARE FILING A MOTION TO COMPEL WITH THE COURT TO OBTAIN INFORMATION AND DOCUMENTS BEING WITHHELD BY DEFENDANTS.

As stated above and within the parties JSP and DP, Plaintiffs are filing a Motion to Compel with this Court to obtain information and documents from Defendants that are pertinent to Plaintiffs' claims in this lawsuit. The information and documents have been requested since October 29, 2021, when Plaintiffs first served Defendants with their First Set of Discovery Requests. Defendants' Discovery Responses are incomplete, and for the most part non-responsive. Despite multiple good-faith "meet and confer" discussions between the parties, Defendants have advised Plaintiffs that they stand on their remaining objections resulting in the necessity for Plaintiffs to seek the assistance of this Court to obtain said information and documents that is necessary for Plaintiffs to properly prepare for trial in this matter.

Respectfully submitted,

s/R. Greg Andrews

_____
R. Greg Andrews, OBA #19037
ANDREWS LAW FIRM, PLLC
2516 Tee Drive
Norman, Oklahoma 73069
Telephone: (405) 360-7001
Facsimile: (405) 360-7002
Email: greg@andrews.law
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Lance E. Leffel, OBA #19511
GABLEGOTWALS
One Leadership Square, 15th Floor
211 N. Robinson
Oklahoma City, OK 73102-7255
Telephone: (405) 235-5500
Facsimile: (405) 235-2875
Email: lleffel@gablelaw.com

*and*

David A. Hughes, Georgia Bar No. 375618
Lauren F. Gordon, Georgia Bar No. 557058
JACKSON LEWIS P.C.
171 17th Street, NW, Suite 1200
Atlanta, Georgia 30363
Telephone: (404) 525-8200
Facsimile: (404) 525-1173
Email: david.hughes@jacksonlewis.com
      lauren.gordon@jacksonlewis.com

*Attorneys for State Farm Defendants*

s/R. Greg Andrews

_____

R. Greg Andrews