

IN THE DISTRICT COURT OF CANADIAN COUNTY
STATE OF OKLAHOMA

FILED
MARIE HIRST COURT CLERK
CANADIAN COUNTY, OKLAHOMA
APR 0 1 2021
BY_____
DEPUTY

HUMPHREY INSURANCE AND FINANCIAL )
SERVICES INC., an Oklahoma corporation; and )
COURTNEY HUMPHREY, an Individual, )
                                                                  )
                    Plaintiffs,                                   )
                                                                  )
v.                                                                )   Case No. CJ-2021- 140
                                                                  )
STATE FARM MUTUAL AUTOMOBILE INS., )
CO.; STATE FARM LIFE INSURANCE CO.; )
STATE FARM FIRE AND CASUALTY CO.; )
STATE FARM GENERAL INSURANCE CO., )
a collection of foreign insurance companies; and )
CLARENCE HOLLEY, an individual. )
                                                                  )
                    Defendants.                                   )

CASE ASSIGNED TO:
JUDGE: PAUL HESSE

## PETITION

Plaintiffs, HUMPHREY INSURANCE AND FINANCIAL SERVICES INC., an Oklahoma corporation, and COURTNEY HUMPHREY, an Individual, for their causes of action against Defendants, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM LIFE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY, a collection of foreign insurance companies (collectively "State Farm"), and CLARENCE HOLLEY (collectively, the "Defendants"), an individual, alleges and states as follows:

1. Plaintiff, Humphrey Insurance and Financial Services Inc. ("HIFS"), is a corporation organized and existing under the laws of the State of Oklahoma.

2. Plaintiff, Courtney Humphrey ("Humphrey"), is a resident of Oklahoma City, Canadian County, Oklahoma. (HIFS and Humphrey are collectively referred to herein as "Plaintiffs").

1

3.      Defendants, State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire and Casualty Company, State Farm General Insurance Company (collectively "State Farm Defendants"), are a collection of foreign insurance companies organized under the laws of the State of Illinois and with principal offices located in Illinois.

4.      Defendant, Clarence Holley ("Holley"), is a resident of Stillwater, Payne County, Oklahoma.

5.      Plaintiff HIFS and State Farm Defendants entered a contract dated December 1, 2018 titled "State Farm Agent's Agreement" which, according to the terms therein, appointed Plaintiff Humphrey as "an Agent" to represent the state Farm Defendants in Oklahoma.

6.      During the relevant time period, Plaintiff Humphrey was a State Farm agent, subject to similar, if not the same, terms and conditions of business operations and practices pursuant to State Farm Agency Agreements.

7.      Plaintiff Humphrey was to perform the functions of a State Farm agent in Canadian County pursuant to and under Agency Agreements.

8.      This lawsuit arises out of insurance operation, conduct and improper activities that occurred, in part, in Canadian County.

9.      Jurisdiction and venue are proper before this Court.

**BREACH OF CONTRACT**

10.     Plaintiffs, HIFS and Humphrey, incorporate herein all prior paragraphs of this Petition.

11. Plaintiff HIFS had a contract with the State Farm Defendants setting out certain terms and conditions governing the relationship and respective businesses of each Party thereto (referred to herein as "Agent's Agreement").

12. Effective December 1, 2018, the Agent's Agreement set forth the objectives, obligations, and responsibilities essential to the relationship between the Agent and State Farm.

13. In the Agent's Agreement, the State Farm Defendants state that they "do not seek, and will not assert, control of your (Agent) daily activities," but they do expect the Agent "to exercise your own judgement as to the time, place, and manner of soliciting insurance, servicing customers, and otherwise carrying out the provisions of this Agreement".

14. Section I, Paragraph C, in part, identifies Plaintiff HIFS as an independent contractor for all purposes, including the power of "full control of your daily activities, with the right to exercise independent judgment as to time, place, and manner" of offering services and otherwise carrying out the provisions of the Agent Agreement.

15. While Plaintiff HIFS is referred to as an "independent contractor" in several provisions of the Agent Agreement, Section I, Paragraph B, identifies the arrangement as a "Principal-Agent relationship" and places an affirmative obligation/duty on Plaintiff HIFS to follow State Farm "procedures, and processes, providing prompt, friendly, accurate, and cost effective service, avoiding conflicts of interest, cooperating with and advancing the interests of the (State Farm Defendants), the agents, the policyholders and the customers."

16. The State Farm Defendants breached the allocation of authority and independent contractor relationship by regularly and systematically infringing on the powers specifically given to Plaintiff HIFS under the Agent Agreement and by requiring Plaintiff HIFS to follow and comply with State Farm procedures and processes.

17. Section I, Paragraph E of the Agent Agreement, identifies as property of State Farm "manuals, forms, records, computer-related and electronic files, equipment, and such other materials, supplies, and services as we may specify from time to time" and provides that all such property shall remain the property of State Farm.

18. Section I, Paragraph F, of the Agent Agreement, in part, identifies the trade secrets and confidential business information of State Farm Defendants to include customer information, property insured identification, expiration or renewal dates of policies, and account and investment information acquired or coming into your (Agent's) possession during the effective period of the Agent Agreement.

19. Defendants also breached the Agent's Agreement by moving, transferring, or otherwise changing clients and customers from Plaintiff HIFS's Agency to other State Farm agencies without reason or justification.

20. In the Agent's Agreement, Section I, Paragraph J, in part, established that Plaintiff HIFS's clients would be left in its account so long as the customers resides within a 75-mile radius of its principal place of business and within a State in which it was duly licensed.

21. Section I, Paragraph J, also provides an exception to the agreement to leave clients in Plaintiff HIFS's account when "we (State Farm Defendants) may, after prior written notice to you, transfer any policy or account to the account of another State Farm agent when the customer makes a bona fide request in writing".

22. In the same section of the Agent's Agreement, Section I, Paragraph J, other agents are restricted in that they "shall neither directly nor indirectly attempt to divert policies or accounts from unassigned accounts or from those of other State Farm agents, or from your own

account to the accounts of other State Farm agents". Yet, this is what the State Farm Defendants did to Plaintiff HIFS.

23. The State Farm Defendants violated the terms of the Agent's Agreement by moving, transferring, or changing clients and customers away from Plaintiff HIFS's Agency without justification, contractual or otherwise, to do so.

24. The State Farm Defendants breached the contract with Plaintiff HIFS by improperly and without justification interfering with Plaintiff HIFS's prospective business opportunities by contacting potential clients to negatively and falsely portray Plaintiff HIFS's business operation.

25. Under the Agent's Agreement, Section I, Paragraph P, Plaintiff HIFS was responsible for the recruitment, selection, compensation, management, and control of its staff and that it was responsible for staffs' activities and for ensuring proper licensing, not the State Farm Defendants.

26. The State Farm Defendants did not have contractual authority to remove staff and/or employees of Plaintiff HIFS's agency.

27. The State Farm Defendants breached the terms of the Agent's Agreement by: labeling Plaintiff HIFS as an Independent Contractor, but requiring Plaintiff HIFS to follow State Farm's procedures and processes; taking, moving and transferring clients and customers of Plaintiff HIFS's Agency to other State Farm agencies without justification; and wrongly interfering with Plaintiff HIFS's authority for employees of Plaintiff HIFS's Agency.

28. Plaintiff HIFS's damages for Defendants' wrongful actions include, but are not limited to: costs and expenses associated with State Farm advertising, signage, and building; lost revenues from continuing agency operations; lost bonuses and other income from dilution of

Plaintiff HIFS's book of business by Defendants moving client to other agencies; and other lost income well in excess of the amount required for diversity jurisdiction under 28 U.S. C. § 1332.

## INTERFERENCE WITH CONTRACT/BUSINESS RELATIONS

29. Plaintiffs, HIFS and Humphrey, incorporate herein all prior paragraphs of this Petition.

30. Plaintiff HIFS had contracts with its clients in whom they had agreed to purchase insurance through them from one or more of the State Farm Defendants. These contracts between Plaintiff HIFS and its clients were separate and apart from the contract between Plaintiff HIFS and the State Farm Defendants referenced above under Plaintiff HIFS's Breach of Contract Claim. As such, the State Farm Defendants' interference was with an existing contractual or business right of Plaintiff HIFS.

31. The State Farm Defendants were aware of the contracts and agreements between Plaintiff HIFS and its clients as was the usual operation of such agencies.

32. The State Farm Defendants were also aware of the Agent's Agreement and provisions therein, specifically Section I, Paragraph J, which precludes the movement of customers/clients without a written request to move having been first submitted by the customer/client.

33. The State Farm Defendants unilaterally, intentionally and without cause, moved, transferred, and in other ways improperly pulled clients from Plaintiff HIFS's Agency and placed the same with different State Farm agents/agencies. The State Farm Defendants' acts are a pattern of practice by State Farm against other similar agents within Oklahoma and other states.

34. The State Farm Defendants interfered with the contracts and made the on-going relationship and exchange of benefits between Plaintiff HIFS and its clients impossible.

35. The State Farm Defendants moved Plaintiff HIFS's clients through improper and unfair means. The State Farm Defendants' conduct was wrongful and malicious and acted with direct damage and injury to Plaintiff HIFS's business. The State Farm Defendants' interfered maliciously, wrongfully, and such interference was neither justified, privileged nor excusable.

36. Prior to the State Farm Defendants' wrongful actions, Plaintiff HIFS's business was growing and had become one of the top producing agencies and operations in the region.

37. Plaintiff HIFS was directly harmed and damaged by the State Farm Defendants' interference in that it lost the business contracts, agreements, and arrangements with economic benefits, of its clients.

38. Plaintiff HIFS was directly harmed by the taking of clients by the State Farm Defendants without its permission, consent, without its input, without any justification by Defendants and without Plaintiff HIFS having acted improperly or otherwise creating any grounds for Defendants' actions.

39. The State Farm Defendants' interference was made with gross negligence or wanton or reckless disregard for Plaintiff HIFS's rights.

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

40. Plaintiffs, HIFS and Humphrey, incorporate herein all prior paragraphs of this Petition.

41. Prior to the wrongful conduct of Defendants, Plaintiff HIFS had built a business and agency that was one of the top producing agencies and operations in the region.

42. At the time of the Defendants' wrongful actions, Plaintiff HIFS had established significant prospective business relationships with clients, both established and potential. A contract or agreement existed between Plaintiff HIFS and its Clients.

43. As such, Plaintiff HIFS had an expectation of business continuation through established clients and prospective economic opportunities through securing and serving future clients. As such, Plaintiff HIFS had the existence of a valid business relation or expectancy, which the Defendants had knowledge of the relationship or expectancy of Plaintiff HIFS.

44. The wrongful conduct by the State Farm Defendants, as alleged herein, effectively shut down Plaintiff HIFS' agency prior in time to the State Farm Defendants' action to terminate the contract with Plaintiff HIFS.

45. The State Farm Defendants directly and intentionally interfered with, and effectively ended, Plaintiff HIFS's prospective business operations.

46. The State Farm Defendants' interference was intentional inducing or causing a breach of termination of the relationship or expectancy. The State Farm Defendants purposely interfered with and disrupted Plaintiff HIFS's prospective economic business advantage because State Farm financially profits by terminating agents. State Farm retains 100% the book of business earnings in full for the length of time (determined at their discretion) that the book of business sits in a "TASP" holding code. State Farm does not pay the scorecard bonuses any further, or even for the year in which it has earned if terminated prior to payout date.

47. State Farm pays the TASP agent or holding code a set monthly rate of approximately $3-7K per month to oversee the policyholders. The Comp Report from November 15, 2020 shows $370,699.17 as Plaintiff HIFS's 2020 YTD Comp. The State Farm Defendants' will retain that entire premium year after year unless they decide to close the TASP and assign out those policies. The State Farm Defendants can leave policies in open holding TASP codes indefinitely.

48. The State Farm Defendants retain all award compensation and trips that Plaintiff HIFS worked for/earned throughout 2020 such as Agent Scorecard Bonus, SCMA SVP CLUB trip, Chairmans Circle trip, Medicare supplement bonus, etc. After Plaintiff HIFS's Scorecard Bonus in 2019, her Comp. was $401,280. Plaintiff HIFS's Scorecard Bonus was $70,000.00 from 2018 paid in 2019. Plaintiff HIFS's Scorecard Bonus for 2019 paid in 2020 was approx. $40,000.00. Plaintiff HIFS qualified for MDRT in June 2020, but to date the State Farm Agents have not sent Plaintiff HIFS's eligibility to MDRT. Plaintiff HIFS has not been paid, and will not be paid, its 2020 Scorecard Bonus because the State Farm Defendants terminated it in November 2020. The State Farm Defendants profit financially because as an agent you spend money on lead generation, marketing, etc. with the expectation that it boosts your Scorecard Bonus payout.

49. This type of interference by the State Farm Defendants was a pattern of practice against other agents within Oklahoma and other states.

50. Plaintiff HIFS was directly harmed by the State Farm Defendants' interference and Plaintiff sustained significant loss of income, current and prospective.

51. The State Farm Defendants' interference was made with gross negligence or wanton or reckless disregard for Plaintiff's rights.

## DEFAMATION

52. Plaintiffs, HIFS and Humphrey incorporate herein all prior paragraphs of this Petition.

53. Since the State Farm Defendants terminated their Contracts with Plaintiff HIFS, they have made numerous false and defamatory statements to third parties about Plaintiff Humphrey. Specifically, the State Farm Defendants have notified other insurance carriers that

Plaintiff Humphrey "inputted inaccurate information and failed to supervise team members related to the auto application process."

54. The statements by the State Farm Defendants are false, and were known to be false by the State Farm Defendants when made to third parties.

55. The false and defamatory statements made by the State Farm Defendants have resulted in Plaintiff Humphrey not being able to obtain lines of insurance from those insurance carriers and have resulted in potential lost income to Plaintiff Humphrey in an amount to be determined at trial. The false and defamatory statements made by the State Farm Defendants have also resulted in Plaintiff Humphrey suffering mental anguish and emotional distress.

56. The false and defamatory statements made by the State Farm Defendants were made with gross negligence or wanton or reckless disregard for Plaintiff Humphrey's rights.

### CONSTRUCTIVE FRAUD/NEGLIGENT MISREPRESENTATION

57. Plaintiffs, HIFS and Humphrey, incorporate herein all prior paragraphs of this Petition.

58. In April of 2020, State Farm advised Plaintiff Humphrey that it intended to audit her and one of her team members' quote activity from 2018 and 2019. Plaintiff Humphrey immediately consulted her Corporate Sales Leader, Defendant Holley, for advice and guidance, as he is the person who trained Plaintiff Humphrey and her team members on the sales process and how to "ghost quote" leads in order to change information to get the lowest rate. Plaintiff Humphrey strictly followed Defendant Holley's advice and training, and she pushed production exactly as he demanded of her.

59. Defendant Holley told Plaintiff Humphrey how to respond to State Farm's audit in writing, shared that he had been through several of these audits with agents in the past, that she should take all blame and say how she understood that she should have been more aware of consumer report generation activity, and that she had created a plan to monitor new reports daily, etc. Defendant Holley assured Plaintiff Humphrey that she was not in jeopardy, that it was unheard of for agents to be fired, and that State Farm was trying to scare her and that they would never terminate an agent unless they were previously warned and failed to cease the activity corporate wanted them to stop.

60. The material representations made by Defendant Holley to Plaintiff Humphrey were false as he knew that he trained Plaintiff Humphrey how to ghost quote the leads and that said ghost quoting resulted in multiple credit reports being run on the potential leads. The representations made by Defendant Holley to Plaintiff Humphrey were made with the knowledge of their falsity, or recklessly made without knowledge of their truth and as a positive assertion, with the intent that they be acted upon by Plaintiff Humphrey.

61. Based upon the representations of Defendant Holley, coupled with the fact that Defendant Holley is the person who taught Plaintiff Humphrey and her team members how to quote, Plaintiff Humphrey responded to the State Farm audit in writing based on Defendant Holley's direction. Plaintiff Humphrey relied upon the false representations of Defendant Holley and took all of the blame and did not identify the fact that Defendant Holley is the person who trained her and her team members how to ghost quote potential leads.

62. Defendant Holley had a duty to exercise reasonable diligence and skill in training Plaintiff Humphrey on her job duties at State Farm as they related to properly obtaining consumer reports of potential leads. Defendant Holley also had a duty to accurately answer all

of Plaintiff Humphrey's questions and provide proper advice about the State Farm audit and disclose to her if there were any issues with the State Farm audit that she needed to be concerned about as it related to the potential termination of her agency agreement with State Farm.

63. Defendant Holley breached this duty by misrepresenting and/or concealing pertinent material facts to Plaintiff Humphrey relating to her response to State Farm's audit.

64. As a result of Defendant Holley's breach of duty, he gained an advantage for himself by misleading Plaintiff Humphrey to her prejudice. Defendant Holley's breach of duty resulted in Plaintiff Humphrey accepting blame for the improper training provided by Defendant Holley.

65. Defendant Holley's misrepresentations constitute constructive fraud.

66. Plaintiff Humphrey was misled by Defendant Holley's misrepresentations and constructive fraud. Plaintiff Humphrey relied on Defendant Holley's misrepresentations to her detriment.

67. As a result of Defendant Holley's constructive fraud and misrepresentation, Plaintiff Humphrey has sustained damages, including deprivation of monies rightfully belonging to her, anger, stress, worry, physical and emotional suffering, and has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorney's fees, costs and interest.

68. The conduct of Defendant Holley was intentional, willful, malicious and in reckless disregard of the rights of the Plaintiff Humphrey, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

Plaintiffs, Humphrey Insurance and Financial Services Inc. and Courtney Humphrey, by and through their undersigned counsel, seek judgment against the State Farm Defendants, for: all damages sustained by them; all damages recoverable for the claims set forth in this Petition; all damages supported by the facts of this manner; pre- and post-judgment interest; the recovery of their costs and attorney's fees; and such further relief as they may be entitled to by law and in equity.

Respectfully submitted,

R. Greg Andrews, OBA #19037
ANDREWS LAW FIRM, PLLC
2516 Tee Drive
Norman, Oklahoma 73069
Telephone: (405) 360-7001
Facsimile: (405) 360-7002
greg@andrews.law
*Attorney for Plaintiffs,*
*Humphrey Insurance and Financial Services Inc.*
*and Courtney Humphrey*

***ATTORNEY'S LIEN CLAIMED***