## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUMPHREY INSURANCE AND FINANCIAL SERVICES, INC., an Oklahoma corporation; and COURTNEY HUMPHREY, an Individual,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INS. CO.; STATE FARM LIFE INSURANCE CO.; STATE FARM FIRE AND CASUALTY CO.; STATE FARM GENERAL INSURANCE CO, a collection of foreign insurance companies,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-22-977-SLP<br>_____<br><br>(District Court of Canadian County; Case No. CJ-2021-140) |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Respectfully submitted,

*/s/ Lance E. Leffel*
Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK  73102
PH: (405) 235-5500;  FAX: (405) 235-2875
lleffel@gablelaw.com

*Attorney for Defendants*

Defendants (collectively, "State Farm"), by and through undersigned counsel, submit the following Reply in Support of Motion for Partial Judgment on the Pleadings.

## I.   INTRODUCTION

Plaintiffs' Response is unpersuasive and falls short for all reasons set forth below, including: (1) Plaintiffs' Petition does not meet the pleading standard in Federal court and they have cited the wrong standard; (2) Plaintiffs impermissibly rely on items from their discovery responses to supplement their pleadings; (3) Plaintiffs illogically claim their pleadings are inadequate because they have not received certain discovery responses from State Farm; and (4) Plaintiffs improperly attempt to amend without specifying any amendments they would make in an effort to cure their defects, which are in fact irremediable.

## II.   ARGUMENT

State Farm replies *infra* as to the specific arguments in Plaintiffs' Response.

### A.   Plaintiffs Ignore and Fail to Meet The Federal Pleading Standard.

Plaintiffs' Response inexplicably misstates the federal pleading standard. (Plaintiffs' Response at 6). Regardless, the claims still fail under the applicable *Twombly/Iqbal* plausibility standard. *Kan. Penn Gaming, LLC. v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). (citing *Twombly's* holding that the "no set of facts" standard "has earned its retirement"). Plaintiffs appear to concede they cannot present plausible causes of action, as they have asked the Court to disregard the federal standard, or alternately to allow Plaintiffs to amend their Petition in Plaintiffs' Response in an attempt to cure the deficiencies pointed out by State Farm.

Plaintiffs also improperly rely on discovery responses to advance their arguments. Those arguments are not responsive to State Farm's Motion because material outside the pleadings is generally not considered in connection with a Rule 12(c) or Rule 12(b)(6) motion.[1] *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (noting that when deciding a motion to dismiss, in addition to the complaint, the "usual rule" is "that a court should consider no evidence beyond the pleadings."). In deciding a Rule 12(c) or Rule 12(b)(6) motion, a federal court "should not look beyond the confines of the complaint itself." *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002) (citing *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 960 (10th Cir.2001), *rev'd on other grounds*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)).[2]

### B. **Plaintiffs Have Not Pled Facts Sufficient To Establish Claims Of Tortious Interference With Contract/Business Relations Or Tortious Interference With Prospective Economic Advantage.**

Plaintiffs have not pled facts in their Petition sufficient to establish claims of tortious interference with contract/business relations and/or tortious interference with prospective

---

[1] This Court may review the Agent's Agreement when ruling on State Farm's Motion without converting it into one for summary judgment. *See Mays v. Liberty Mut. Fire. Ins. Co.,* No. CIV-16-996-F, 2016 U.S. Dist. LEXIS 202280, at *5 n. 1 (W.D. Okla. Oct. 21, 2016) Here, the Agent's Agreement is central to Plaintiffs' claims against State Farm and is referenced repeatedly throughout the pleadings. (*See generally* Petition). Regardless, as it is attached to State Farm's Answer and not challenged by Plaintiffs, it has become a part of the pleadings. *See* Fed. R. Civ. P. 10(c).]

[2] A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Lottie v. Midland Credit Mgmt.*, Case No. CIV-21-1171-PRW, 2022 Dist. LEXIS 111315, *2 (W.D. Okla. June 23, 2022) (*citing Zevallos v. Allstate Prop. & Cas. Co.*, 776 F. App'x 559, 561 n.1 (10th Cir. 2019) (quoting *Atl. Richfield Co. v. Farm Credit Band of Wichita, 226 F.3d 1138, 1160* (10th Cir. 2000)).

economic advantage. Plaintiffs claim State Farm breached the Agent's Agreement – and imply State Farm "interfered" with Humphrey's relations with her employees - by requiring Plaintiff Humphrey to follow State Farm procedures contrary to her independent contractor status (including the right to exercise independent judgment as to time, place, and manner of offering services). (Plaintiffs' Response at 3). The Agent's Agreement clearly states "[a]s a State Farm agent, the Agent's obligations and duties include, but are not limited to, following State Farm procedures and processes . . . ." (State Farm's Motion, Exhibit A). It is illogical to suggest State Farm could breach the Agent's Agreement by following one of its provisions.

Further, the "interference" alleged in the Petition is limited to "clients," i.e., customers. As previously briefed, customers belong to State Farm, which cannot - as a matter of law - interfere with its own customers.[3] Moreover, Plaintiffs' Response makes clear the alleged facts underlying their tortious interference claims occurred *after* State Farm terminated the Agent's Agreement. As explained below, there can be no plausible tortious interference claims arising out the reassignment of customers *after* State Farm terminated the Agent's Agreement with Plaintiff Humphrey.[4]  Indeed, the Agent's

---

[3] The Agent's Agreement makes clear, customers belong to State Farm, and not to individual Agents. *See*, State Farm's Motion at 6-7, Exhibit A, at 2 ("Information regarding names, addresses, and ages of the customers of the Companies . . . are trade secrets and confidential business information wholly owned by the Companies . . . .") (emphasis added).

[4] Plaintiffs' Response also asserts, for the first time, factual allegations that State Farm wrongfully terminated the Agent's Agreement and wrongfully interfered with contracts Plaintiffs had with their employees and third-party vendors. (Plaintiffs' Response at 4,

3

Agreement provides, in part, State Farm agents "represent the Companies" only "while properly licensed so to act, in accordance with the provisions of this Agreement." (State Farm's Motion, Exhibit A, at preamble). If the Agent's Agreement is terminated, either by State Farm or the agent, then the agent is no longer properly licensed to act on behalf of State Farm in any respect, including as to State Farm's customers. (*Id.*, at ¶ III.A.). The Agent's Agreement further states "[i]nformation regarding names, addresses, and ages of customers . . . the description and location of insured property; expiration or renewal dates of State Farm policies, and account and investment information acquired or coming into the Agent's possession during the effective period of this Agreement . . . are trade secrets and confidential business information wholly owned by the Companies" and "[t]he Agent's possession of this information is only for use in carrying out the Agent's duties and responsibilities under this Agreement." (*Id.*, at ¶ I.F.).

The Agent's Agreement further provides "[a]fter termination of this Agreement you agree not to act or represent yourself in any way as an agent or representative of the Companies" and "[w]ithin ten days after the termination of this Agreement, all property belonging to the Companies shall be returned or made available for return to the Companies or their authorized representative." (*Id.*, at ¶ III.C.). In sum, State Farm could not have interfered with Plaintiffs' business relations or prospective economic advantage as it relates to customers because, by the plain terms of the contract; (1) customer information [and the

---

11-12). These allegations were not included in Plaintiffs' Petition, and Plaintiff's should not be permitted to supplement their defective pleadings with their Response.

customers] belonged to State Farm, including after the termination of the Agent's Agreement, and (2) upon termination of the Agent's Agreement, Plaintiffs lost all authority to perform services for State Farm customers.

Plaintiffs nevertheless contend "Defendants improperly and contrary to the facts, assert that Plaintiffs did not have a direct contractual relationship with their customers." (Plaintiffs' Response at 8). Even assuming, *arguendo*, Plaintiffs did in fact have contracts with their customers, so did State Farm—the Agent's Agreement is clear State Farm customers belong to State Farm. Plaintiffs are either willfully ignoring or misinterpreting provisions of the Agent's Agreement referenced above. Likewise, whether Plaintiffs were independent contractors with control over their daily activities (Plaintiff's Response at 8-9) has no bearing on the contractual provisions clearly stating all customers belong to State Farm and not to the agent. Even more, Plaintiffs have never identified a contract between Plaintiffs and State Farm customers, nor do they allege any except in the broadest, most conclusory terms. This is because no such contracts can possibly exist under the Agent's Agreement.

Moreover, Plaintiffs argue "Defendants wrongfully transferred the agent-of-record on numerous customer policies/commissions/premiums (contracts) from Plaintiff HIFS to one of Defendant's agents, Ann Marie Smith, without the customer's knowledge and/or consent." (Plaintiffs' Response at 11). Again, Plaintiffs allege the transfers of customer policies occurred *after* State Farm terminated the Agent's Agreement. *Id.* As discussed above, any transfer of State Farm customers – particularly after the termination of the

5

Agent's Agreement - is insufficient to allege any tortious interference claim. As a final effort, Plaintiffs also contend one of the customers State Farm transferred was Plaintiff Humphrey herself and her individual health insurance policy she purchased after her termination. (Plaintiffs' Response at 12). Plaintiffs' Petition contains no allegations related to Plaintiff Humphrey's individual health insurance policy. To the extent Plaintiffs attempt to bolster the allegation in their Petition with new factual allegations in their Response, this attempt to amend the complaint is impermissible. *Kohli v. McGee Eye Surgery Ctr. LLC*, No. CIV-17-542-C, 2017 U.S. Dist. LEXIS 124148, *7 (W.D. Okla. Aug. 7, 2017).

Plaintiffs' Petition contains no factual allegations plausibly suggesting an entitlement to relief for tortious interference with contract/business relations and tortious interference with prospective economic advantage, the claims should be dismissed.

**C.  Plaintiffs' Defamation Claim Should Be Dismissed Because Plaintiffs Do Not Plead Sufficient Facts To Establish The Cause Of Action.**

Plaintiffs have not alleged facts sufficient to sustain their defamation claim, and therefore, the claim should be dismissed. Plaintiffs make a conclusory assertion that their "Petition clearly states Defendants made numerous false and defamatory statements to third parties about Plaintiff Humphrey when they notified other insurance carriers that Plaintiff Humphrey 'inputted inaccurate information and failed to supervise team members related to the auto application process.'" (Plaintiffs' Response at 15-16). Merely identifying State Farm is not sufficient to sustain a defamation claim, and to the extent Plaintiffs are accusing

6

State Farm agents of making defamatory statements, Plaintiffs have not made clear in their Petition *how* State Farm is liable for statements made by other independent contractor agents. *See Pike v. City of Mission, Kansas*, 731 F.2d 655, 661 (10th Cir. 1984) (holding that plaintiff's defamation claim was inadequate "because it pleads insufficient facts concerning time, place, actors, or conduct to enable defendants to respond") (*overruled on other grounds as stated in Baker v. Board of Regents*, 991 F.2d 628, 633 (10th Cir.1993)).

Notably, Plaintiffs' Response does not refute State Farm's argument that their *Petition* fails to allege actual details about the defamatory statements. Plaintiffs do not allege who made any statement, what third party was on the receiving end of any statement, or how the publication occurred (*e.g.*, whether the communications were oral or written). *Id.* Instead, Plaintiffs cite their responses to State Farm's interrogatories seeking information about the defamation claim attempting to establish sufficient factual allegations nudging their claim across the line from conceivable to plausible. Such allegations contribute nothing to their defamation claim. (Plaintiffs' Response at 18). Plaintiffs' discovery responses cannot somehow supplement or amend their Petition. *See Waller*, at 1282-83. Even if they could, any alleged defamatory statements concerning Plaintiff Humphrey's termination – including those described by Plaintiffs in their discovery responses - are not actionable because such statements are substantially true.[5]

---

[5] Plaintiffs also cite at page 19 of their Response to statements attributed by Plaintiffs to State Farm in the parties' Joint Status Report and Discovery Plan [Doc. No. 16]. These statements are similarly insufficient and not actionable because they are <u>true</u>.

In fact, Plaintiffs *concede* in their Petition the fraudulent actions leading to Plaintiff Humphrey's termination. In Plaintiffs' Petition, Plaintiff Humphrey admits to the fraudulent conduct of "ghost quoting" leads as purportedly urged by former defendant Clarence Holley - and failing to supervise employees, even "pushing" them to ghost quote "exactly as Holley [allegedly] demanded of her."[6] (Plaintiffs' Petition at ¶¶58-61). This is contrary to Plaintiffs' Response claiming "nowhere in Plaintiff's Petition do Plaintiffs admit they 'inputted inaccurate information' or 'failed to supervise team members related to the auto application process.'" (Plaintiffs' Response at 16). Plaintiffs cannot now contradict the admissions and allegations contained in their Petition by way of their Response.

Further, Plaintiffs claim State Farm's reports to the Oklahoma Department of Insurance (DOI) are not privileged communications because the "allegations of defamation by Plaintiffs do not relate to suspected fraud, but rather the allegation of putting inaccurate information/failure to supervise." (Plaintiffs' Response at 16-17). The facts are, *as pled by Plaintiffs*, that Plaintiff Humphrey admitted to "ghost quoting," which "resulted in multiple credit reports being run on the potential leads." (Plaintiffs' Petition at ¶¶ 59-61). Plaintiffs fail to acknowledge that providing false information for insurance quotes to lower

---

[6] The Court should not put any weight on Plaintiffs' contention that Clarence Holley acted inappropriately. Plaintiffs named Holley a defendant, apparently to avoid federal court, but never served him. Over a year later, Plaintiffs voluntarily dismissed their claims against Holley. Regardless, Plaintiff admits in her Petition that she engaged in fraudulent conduct. Even assuming *arguendo* Holley encouraged such conduct, it is entirely irrelevant for the purposes of this Motion.

premiums is, in fact, a fraudulent activity. Therefore, any of State Farms' alleged statements to the DOI about Humphrey "putting inaccurate information/failure to supervise" (Plaintiffs' Response at 16-17) constitute privileged communications and cannot form the basis for a defamation claim.

For these reasons, Plaintiffs have not asserted any facts in their Petition establishing a viable defamation claim, and the claim should be dismissed.

### D. Plaintiffs Should Not Be Allowed Leave To Amend Their Petition.

It is not sufficient for a plaintiff to merely suggest in a response brief he should be allowed to amend a petition if the district court concludes the pleadings failed to state a plausible claim. *See Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989). Instead, a plaintiff must file a written motion for leave to amend. *Id.* at 370. The deadline to file motions to join additional parties and amend the pleadings expired on January 30, 2023. [Doc. 17] Clearly Plaintiffs have had sufficient time to amend their Petition in federal court but have chosen not to.

Further, Plaintiffs should not be permitted to amend their Petition because they have not provided the proposed amendments they would make to cure their defects. Plaintiffs' blanket request for leave to amend does not suffice. W.D. Okla. LCvR15.1 (requiring a party to attach the proposed pleading as an exhibit to the motion, among other things). Even if the Court allowed Plaintiffs to try to cure their defective Petition, any such amendment would be futile because there are no facts that would make their claims plausible. *Jefferson*

*Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

Likewise, the Court should reject Plaintiffs' contention their pleadings are insufficient because State Farm has not fully responded to their discovery. Such discovery "deficiencies" are irrelevant to whether Plaintiffs have presented a plausible cause of action on any given claim so as to survive a motion to dismiss/motion for judgment on the pleadings. A plaintiff cannot rely on discovery requests to cure a defective pleading. As such, discovery disputes are irrelevant to whether a plaintiff has sufficiently stated a claim under the *Twombly/Iqbal* plausibility standard.[7]

## III. Conclusion

For all the reasons discussed herein and in State Farm's Motion, Plaintiffs' claims should be dismissed in their entirety, *with prejudice,* for failure to state a plausible legal claim and for their inability to be cured by subsequent amendment to the Petition. State Farm respectfully requests that the Court grant State Farm's Motion for Partial Judgment on the Pleadings.

---

[7] Plaintiffs' assertion or insinuation State Farm's purported failure to provide complete discovery responses has somehow prevented them from filing a Petition satisfies the *Twombly/Iqbal* standard should be rejected. (Plaintiffs' Response at 20). Rule 12(b)(6) and Rule 12(c) promote judicial economy by eliminating meritless claims so that the Court and opposing party may avoid the time and expense associated with discovery on such claims and any resulting disputes. Here, Plaintiffs' propounded sixty-eight (68) requests for production and twenty-seven (27) interrogatories. Despite many of Plaintiffs' requests being unduly burdensome and seeking irrelevant information, State Farm responded and/or the parties reached agreement as to most of the requests, and of the bulk of remaining issues relate to the claims that are the subject of this Motion.

10

Respectfully submitted,


*/s/ Lance E. Leffel*
Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK  73102
PH: (405) 235-5500;  FAX: (405) 235-2875
*lleffel@gablelaw.com*

David A. Hughes
*(admitted pro hac vice)*
JACKSON LEWIS P.C.
171 17th Street, NW, Suite 1200
Atlanta, Georgia 30363
PH: (404) 525-8200; FAX: (404) 525-1173
David.Hughes@jacksonlewis.com

Tracey R. Wallace
*(admitted pro hac vice)*
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, TX 75201
PH: (214) 520-2400; FAX: (214) 520-2008
Tracey.Wallace@jacksonlewis.com

Claire L. Cook
*(admitted pro hac vice)*
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, TX 75201
PH: (972) 728-3295; FAX: (214) 785-6908
Claire.Cook@jacksonlewis.com

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

  I hereby certify that on January 31, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

R. Greg Andrews, OBA No. 19037
Matthew B. Eckstein, OBA No. 19087

*Attorneys for Plaintiff*

                */s/ Lance E. Leffel*