IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUMPHREY INSURANCE AND ) <br> FINANCIAL SERVICES INC., an ) <br> Oklahoma corporation; and ) <br> COURTNEY HUMPHREY, an ) <br> Individual, ) <br> ) <br>         Plaintiffs, ) <br> ) <br>    v. ) <br> STATE FARM MUTUAL ) <br> AUTOMOBILE INS. CO.; STATE ) <br> FARM LIFE INSURANCE CO.; ) <br> STATE FARM FIRE AND CASUALTY ) <br> CO.; STATE FARM GENERAL ) <br> INSURANCE CO., a collection of ) <br> foreign insurance companies; and ) <br> CLARENCE HOLLEY, an individual. ) | Case No.: 5:22-cv-00977-SLP <br><br> (District Court of Canadian County; <br> Case No. CJ-2021-140) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

Defendants State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company (collectively, "State Farm"), by and through undersigned counsel, respond in opposition to Plaintiffs Humphrey Insurance and Financial Services, Inc. and Courtney Humphrey's (collectively, "Plaintiffs") Motion to Compel, respectfully showing the Court as follows:

## I. RELEVANT BACKGROUND AND SUMMARY OF RESPONSE

This lawsuit concerns a now-former State Farm Independent Contractor Agent, Plaintiff Courtney Humphrey ("Humphrey"). State Farm terminated Humphrey's Agent's Agreement ("Agreement" or "Agent's Agreement") effective November 20, 2020, after an investigation into her agency, Humphrey Insurance and Financial Services ("HIFS") revealed significant compliance issues and inappropriate conduct. The breach of contract claim brought by Plaintiffs against State Farm *does not* relate to the termination of the Agreement. The Agreement provides State Farm the right to terminate at will and Plaintiffs presumably recognize this. Plaintiffs also bring claims for interference with contract/business relations, interference with prospective economic advantage, and defamation. Not only are these claims factually and legally meritless (as explained in State Farm's recently filed motion for partial judgment on the pleadings), but the majority of Plaintiffs' discovery requests – including those that are the subject of Plaintiffs' Motion - are improper and objectionable on numerous grounds.[1]

Plaintiffs issued 27 interrogatories and 70 requests for production to State Farm, including many that were onerous, irrelevant, duplicative, or otherwise defective.

---

[1] For example, Plaintiffs complain of Request No. 53, which asks for "the complete personnel file for each person directly involved in the determination to terminate Plaintiffs' agency agreement." The termination of Plaintiffs' Agreement is not properly at issue in this lawsuit. Further, asking for the personnel file of each person involved in that decision is egregiously irrelevant, overbroad, and violative of privacy rights of those not party to this lawsuit. For more examples and a full detailing of Plaintiffs'

Subject to and without waiving its valid objections, State Farm responded in good faith to Plaintiffs' requests and has supplemented its discovery responses four additional times (producing a total of 3,606 pages of documents). *See generally* Plaintiffs' Motion, Exhibits 1, 4, 5, 6 and 7. State Farm supplemented its discovery responses despite Plaintiffs' ongoing failure to confer, which was the basis for the Canadian County District Court's denial of Plaintiffs' first Motion to Compel at a hearing held October 21, 2022. Despite the denial of Plaintiffs' motion in state court, following removal, State Farm served its Fourth Supplemental Responses on December 9, 2022. *See* Plaintiffs' Motion, Exhibit 7.

Plaintiffs' Motion fails to discuss, let alone satisfy, Plaintiffs' burden to demonstrate relevance. Plaintiffs' Motion lacks meaningful discussion as to the discovery requests at issue as well as facts and authority to support each discovery request. Plaintiffs merely state, without providing any legal basis or argument, that this Court should order State Farm to respond to Plaintiffs' discovery requests.[2]

For the reasons explained below, the Motion should be denied.[3]

---

improper requests, *see* State Farm's March 1, 2022 letter responding to Plaintiffs' "discovery deficiency" letter. (Plaintiffs' Motion, Exhibit 3).

[2] This has been a continuing issue throughout this litigation. Plaintiffs have never demonstrated to State Farm how their requests are relevant and in fact refused to engage in any meaningful discussion prior to the state court's denial of their motion to compel. State Farm nonetheless has continued to offer to discuss a potential supplementation if Plaintiff were to ever act in good faith. *See e.g.*, Plaintiffs' Motion, Exhibit 3.

[3] In the event this Court grants Plaintiffs any relief, which it should not, their request that State Farm be forced to comply within three (3) days of any Order is simply bizarre. Presumably, Plaintiffs justify this position by blaming State Farm for "delay." Their

## II.   ARGUMENTS AND AUTHORITIES

### A.   Plaintiffs Fail to Satisfy Their Burden to Show Their Requests are Relevant.

State Farm has objected to the requests covered in Plaintiffs' Motion based on lack of relevance and other grounds.  Plaintiffs' Motion, however, contains nothing more than a recitation of the discovery requests and State Farm's responses/objections with no explanation as to how the information sought is relevant.

The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.  Failure to make a colorable initial showing as to relevance can doom a motion to compel.  *See Sykes v. Bergerhouse*, 2021 U.S. Dist. LEXIS 238592, Civ. No. 20-333 CBG, at *5-6 (W.D. Okla. December 14, 2021)., quoting *Dotson v, Experian Info Sols. Inc.*, Civ. No. 17-575 TDD, 2019 U.S. Dist. LEXIS 17392, at *5 (W.D. Okla. Feb. 4, 2019); *see also Jones v. State Farm Fire & Cas, Co.*, 2022 U.S. Dist. LEXIS 87405, Civ. No. 20-00684 JWD, at *7 (W.D. Okla. Mar. 29, 2022) ("If the relevance of a discovery request is not apparent, the party seeking the discovery bears the burden to demonstrate relevance.").

Nowhere in their Motion do Plaintiffs satisfy their burden to show relevance. Therefore, the Motion is fatally flawed and should be denied for that reason alone.[4]  If

---

account/recitation of the discovery and procedural history, however, is highly misleading as set forth in section II.C. *infra*.

[4] Plaintiffs cannot cure this fatal error in a reply brief.  *See Glossip v. Chandler*, Case No. CIV-14-0665-F, 2020 U.S. Dist. LEXIS 229130, at *12-13 (W.D. Okla. Dec. 7, 2020) (finding that plaintiffs' new ground for discovery of documents responsive to a request for production was asserted for the first time in a reply brief, and was, for that

the Court, however, is inclined to consider the specific requests covered in Plaintiffs' Motion despite this inadequacy, State Farm addresses them below.

### B. The Requests Set Forth in Plaintiffs' Motion Are Objectionable Based on Relevance and Other Grounds.

The discovery requests listed in Plaintiffs' Motion each seek documents and information bearing no relation to the claims and allegations in the Complaint.[5] Some also are overbroad, unduly burdensome, duplicative, ask for privileged information, and violate non-parties' privacy interests. State Farm has tailored its objections to each request and has asserted the objections that are applicable to each improper request. Plaintiffs' discovery as a whole is objectionable, often duplicative, and is simply designed to harass State Farm. State Farm has responded to most of it notwithstanding its objections but stands by each of its relevance and other objections to the requests covered in Plaintiffs' Motion.

Plaintiffs' Motion asks the Court to compel State Farm to produce documents in response to Requests for Production ("RFP") Nos. 19, 20, 24, 25, 32, 43, 44, 45, 46, 47, 49, 53, 54, 55, 56 and 57. State Farm will address these requests responses below and

---

reason, disregarded); *see also Graves v. Colvin*, Case No. CIV-12-375-M, 2013 U.S. Dist. LEXIS 109592 (W.D. Okla. July 13, 2013), *aff'd*, 2013 U.S. Dist. LEXIS 108687 (collecting cases).

[5] RFP Nos. 19, 20, 24, 25 are possible exceptions because what Plaintiffs are seeking has been unclear. As addressed below, these RFPs are also objectionable for vagueness and other reasons. State Farm nonetheless produced documents responsive to these requests and agreed to look further when Plaintiffs finally offered clarification the day before filing their Motion.

stands on its objections to the discovery requests listed in Plaintiffs' Motion for the following reasons:

### 1. Requests relating to "compliance checks" (RFP Nos. 19, 20, 24 and 25).

As noted in State Farm's objections, the term "compliance check" as used in these requests is vague and undefined, and as such, the requests do not describe with reasonable particularity the documents or categories of documents requested. State Farm objected to these requests initially. In his March 1, 2022 letter, State Farm's counsel addressed these requests again, reiterating State Farm's confusion as to the term "compliance checks," noting that they are duplicative of each other and of other requests, and further explaining that "State Farm is producing the audit report related to Humphrey's agency as well as relevant compliance communications and documentation related to Humphrey's agency." *See* Plaintiffs' Motion, Exhibit 3. The audit report sufficiently responds to these requests, as it sets forth in detail all reasons supporting State Farm's termination of the Agent's Agreement. With regard to the requests seeking documents and information relating to Lori King (RFP Nos. 20 and 25), who was employed by Plaintiffs, State Farm's counsel explained Lori King was not an employee of State Farm and did not have an Agent's Agreement with State Farm, and that "any relevant information related to Lori King is encompassed [in the documents that have been produced]."

Approximately 320 days after State Farm first objected to the term "compliance checks," and after State Farm's counsel raised the issue numerous times, Plaintiffs'

counsel finally offered some clarification in a February 1, 2023 email. The following day, State Farm counsel advised Plaintiffs' counsel via email that State Farm was reviewing the requests further. *See* State Farm's <u>Exhibit 1</u>, February 1-2, 2023 E-mail Exchange Between Counsel. Two hours later, Plaintiffs filed their Motion to Compel. Plaintiffs neglected to mention any of this in their detailed procedural history. Because Plaintiffs failed to provide clarification until one day before filing their Motion, their contention that State Farm has not sufficiently responded should be disregarded.

For all these reasons, Plaintiffs' Motion as to RFPs No. 19, 20, 24 and 25 should be denied.

    **2.**    **<u>Request relating to TICA policies and procedures (RFP No. 32).</u>**

Policies and procedures related to the agency candidate process and Term Independent Contract Agents ("TICAs") are not relevant to Plaintiffs' claims in this case. TICAs were independent contractor agents who completed their internship programs and who could later be offered an Agent's Agreement after a twelve-month TICA contract had been executed and the TICA period successfully completed. Plaintiffs' claims are for breach of contract, interference with contract/business relations, interference with prospective economic advantage, and defamation. These claims relate to events alleged to have occurred <u>after</u> Humphrey signed her Agreement. Humphrey served her 12-month term as a TICA after completing her internship program, but <u>before</u> entering into the Agent's Agreement. Plaintiffs allege conduct by State Farm during her time as an Agent (and not as a TICA) breached the Agent's

Agreement. TICA policies and procedures are irrelevant because: (1) the time period during which Humphrey was a TICA is distinct from the period at issue in this suit and (2) Plaintiffs' claims have nothing to do with the brief period in which she was a TICA. State Farm has already produced documents that contain information relating to policies and procedures that pertained to Humphrey's agency, including the audit report and compliance documentation related to her agency. Plaintiffs have failed to show how TICA-related information sought by this request is relevant to whether State Farm breached the Agent's Agreement, interfered with Plaintiffs' purported customers, or defamed Plaintiffs. As such, Plaintiffs' Motion as to these requests should be denied.

### 3.  Requests relating to former agent Kirk Fuqua (RFP Nos. 43, 45, 46 and 47).

These requests seek irrelevant information. Kirk Fuqua is another former Oklahoma State Farm Agent whose Agent's Agreement was terminated by State Farm *before* Plaintiffs' Agreement was terminated. Fuqua has a lawsuit pending in Canadian County District Court (Case No. CJ-2020-603) against Plaintiffs and State Farm. Documents related to the termination of Kirk Fuqua's agency—or documents related to Fuqua's agency in general—are not relevant to Plaintiffs' claims in this case. Specifically, documents and communications related to: (1) State Farm customers serviced by Fuqua's former agency (RFP No. 43); (2) "Fuqua's termination/resignation" mailed by State Farm to the Oklahoma Department of Insurance (RFP No. 45); (3) Fuqua's employees and audits of their "complete consumer report history[ies]" (RFP No. 46); and (4) agents who formerly worked for Fuqua or

"who attended Kirk Fuqua's SWAT Program" (RFP No. 47) are entirely irrelevant to the claims asserted by Plaintiffs in this case.

These requests also are objectionable on other grounds as stated in State Farm's discovery responses and various correspondence with Plaintiffs' counsel. *See e.g.*, Plaintiffs' Motion, Exhibits 1, 3. In particular, RFP Nos. 43 and 46 are objectionable to the extent they seek private and confidential information regarding State Farm's customers. State Farm maintains strong privacy policies as to how it collects, uses, protects and discloses its customers' personal information. The insurance industry is highly regulated due, in part, to concerns about customers' privacy. State laws and regulations require various privacy protections and notices. State Farm has a strong interest in protecting the privacy of its customers, particularly where – as here - the customer information sought is wholly irrelevant to Plaintiffs' claims.

Moreover, RFP No. 47 asks for "the complete consumer report history for all agents, who formerly worked with or for Kirk Fuqua, and who attended Kirk Fuqua's SWAT program between January 1, 2016 and December 31, 2020." Not only is this request wholly irrelevant because any material related to Kirk Fuqua is not at issue, but it is entirely overbroad to ask for the (i) consumer report history for (ii) all agents—which may have been in the thousands—who formerly worked with or for Fuqua or attended his programs, (iii) over a four-year period. Upon information and belief, thousands of agents attended Fuqua's Survival With Accountability Tactics ("SWAT") programs. SWAT programs were conducted entirely by Fuqua. The programs were

not approved by, or done in conjunction with, State Farm. State Farm accordingly has no knowledge or information as to which agents may have attended SWAT programs. Thus, State Farm has no way of complying with this request. Even if it could, it would be unduly burdensome and would require innumerable hours to produce the "complete consumer report history for all agents … who attended Kirk Fuqua's SWAT program between January 1, 2016 and December 31, 2020."

State Farm's interactions with Fuqua have no bearing on whether State Farm might have breached its Agreement with Plaintiffs as alleged, or whether State Farm improperly interfered with Plaintiffs' purported customers, or whether State Farm somehow defamed Plaintiffs. In sum, these requests seek information entirely irrelevant to Plaintiffs' claims in this lawsuit. Nonetheless, State Farm previously supplemented its response to Interrogatory No. 22 to state there were 166 total policy/account transfers from Fuqua's agency to Humphrey's agency. *See* Plaintiff's Motion, Exhibit 4. The large number of transfers further supports State Farm's additional objections to the requests on undue burden and other grounds. It would require substantial hours by State Farm and by outside counsel to search for, review and produce documents related to 166 customers as requested in RFP Nos. 43 and 46. Also, these requests seek personal and confidential information relating to State Farm customers.

Documents relating to Kirk Fuqua and his former agency have zero relevance to Plaintiffs' claims in this case. These requests are nothing more than a fishing expedition

by Plaintiffs. Additionally, these requests seek private customer information and place an undue burden on State Farm. For all the reasons above, Plaintiffs' Motion as to these Requests should be denied.

### 4. Requests relating to State Farm's customers moved after termination (RFP Nos. 44 and 49).[6]

The Agreement unambiguously establishes that State Farm customers belong to State Farm, not the agent.[7] Thus, the identities of the individual policy/account holders are irrelevant and confidential to boot. Moreover, the "interference" alleged by Plaintiffs refers solely to State Farm's transfer <u>of its own</u> customers to other State Farm agents for servicing <u>after</u> Plaintiffs' contractual relationship with State Farm had ended. These transfers are immaterial. The Agreement was terminable by either party at will. As the insurer, State Farm obviously (because of its contractual and statutory obligations to State Farm policyholders) had to transfer its own customers somewhere after termination of the Agent's Agreement with Plaintiffs (the termination of the Agreement meant that Plaintiffs lacked any authority to act on behalf of State Farm, including with respect to any State Farm insurance products) and had the unilateral contractual right to do so. These requests are entirely irrelevant to Plaintiffs' contract

---

[6] RFP No. 43, discussed *supra* as it relates to Fuqua, also falls into this category to the extent it seeks information regarding State Farm customers moved to Humphrey's agency following termination of <u>Fuqua's</u> agency.

[7] For a full discussion of this issue, including relevant portions of the Agent's Agreement, *see* State Farm's Motion for Partial Judgment on the Pleadings [Doc. 14].

claim. Because State Farm cannot as a matter of law interfere with its own customers,[8] the information sought in these requests cannot possibly be relevant to Plaintiffs' interference claims. Plaintiffs likewise cannot establish any relevance as to their defamation claims.

In addition, these requests are overbroad, burdensome, and grossly disproportionate, as they essentially seek all communications between State Farm and its 833[9] customers who were transferred from Humphrey's agency following termination of her Agent's Agreement on compliance grounds. The only purpose of these requests is to needlessly increase the cost of litigation for State Farm. Nonetheless, State Farm previously supplemented its responses to Interrogatory 23 with information regarding the number of policy/account transfers.[10]

Plaintiffs have offered no explanation as to how confidential, personal information regarding State Farm's own customers –who were moved to other agencies out of necessity following termination of Humphrey's Agent's Agreement – are in any way relevant to the claims asserted by Plaintiffs in this lawsuit. They are not relevant, and Plaintiff's Motion should be denied as to RFP Nos. 44 and 49.

---

[8] *Id.*

[9] *See* State Farm's First Supplemental Response to Plaintiffs' Interrogatory No. 23 (Plaintiff's Motion, Exhibit 4). It would require extensive labor by State Farm and outside counsel to search for, review and produce documents related to State Farm's 833 customers as requested in RFP Nos. 44 and 49. Also, these requests seek personal and confidential information relating to State Farm customers.

[10] *Id.*

### 5. Requests for personnel files of State Farm employees (RFP Nos. 53, 54, 55, 56 and 57).

The contents of personnel files of State Farm employees are wholly irrelevant to Plaintiffs' claims in this case. Humphrey was not an employee of State Farm, and the parties' relationship was governed by the Agreement.[11] As such, it is the parties' actions in relation to their contractual obligations that are relevant. Information contained in the personnel files of the requested individuals, and in particular, the individuals involved in the determination to terminate Plaintiffs' Agreement, has no bearing on Plaintiffs' claims in this case. These requests are merely fishing expeditions and designed to harass. Further, these requests are violative of the privacy interests of individuals who are not parties to this lawsuit.

### C. Plaintiffs' Procedural Recitation is Highly Misleading.

Finally, the detailed procedural history set forth in Plaintiffs' Motion is grossly misleading. Plaintiffs falsely imply State Farm is to blame for "four hundred sixty-three (460)" (sic) days of delay. *See* Plaintiffs' Motion at p. 13. Further, Plaintiffs disingenuously accuse State Farm of "failure and/or refusal . . . to cooperate in the discovery process." *Id.* To the extent the Court might consider this relevant, State Farm responds below.

---

[11] The parties' relationship and conduct are governed by their Agreement. Plaintiffs also assert tort claims for "interference" and defamation, which are subjects of State Farm's pending Rule 12(c) motion. The personnel files are irrelevant to those claims as well. Plaintiff was not a State Farm employee; thus, this is not an employment discrimination case or similar claim where – at least in some limited instances – a supervisor's or "comparator's" personnel documents might have some relevance.

Prior to removal, Plaintiffs repeatedly refused to respond to State Farm's correspondence or explain how their requests were relevant and further refused to confer in good faith. To the extent State Farm "stood on its objections," it was because Plaintiffs would not confer with State Farm or explain how their requests were relevant. This was fully briefed in state court and validated by the judge's admonishment and denial of Plaintiffs' motion to compel due to their failure to confer. *See* State Farm Exhibit 2, Transcript of Proceedings had on October 21, 2022 Before the Honorable Paul Hesse, District Judge, pp 1-11.

State Farm first raised relevance and other objections in their discovery responses served December 15, 2021. *See* Plaintiffs' Motion, Exhibit 1. Plaintiffs' counsel sent a letter on January 26, 2022 demanding State Farm respond to Plaintiffs' requests. *See* Plaintiffs' Motion, Exhibit 2. The letter demonstrated a total lack of good faith. Plaintiffs did not explain how any requests were relevant, and instead, repeatedly dismissed all of State Farm's objections as "boilerplate." State Farm nonetheless responded by a March 1, 2022 letter, further explaining its position on the various requests, and inviting Plaintiffs to further discuss all responses and objections. Plaintiffs never bothered to respond to the letter before filing their motion to compel months later. Plaintiffs' counsel did call State Farm's counsel shortly before filing their motion, but only to say they would be filing a motion as they presumed State Farm was "standing on its objections." State Farm's counsel reiterated that State Farm would

14

reconsider certain objections if Plaintiffs would explain how they were relevant. Plaintiff refused, and instead filed their state court motion to compel.

Plaintiffs finally conferred with State Farm, ostensibly in good faith, on October 27, 2022 after their state court motion to compel was denied. The parties were able to eliminate many issues at that time. Plaintiffs, however, have never offered any explanation as to how the RFPs covered in their present Motion are relevant.

In sum, to the extent there have been delays in resolving these issues, they are due to: (1) Plaintiffs' failure and refusal to confer as evidenced by the state court's denial of their earlier-filed motion to compel; (2) their continuing failure (including in this Motion) to explain the relevance of information and documents requested; and (3) their generally unreasonable and harassing positions regarding discovery.

### III.  CONCLUSION

For all reasons set forth above, State Farm requests this Court deny Plaintiffs' Motion to Compel and award State Farm such further relief as this Court deems just and proper, including reasonable attorneys' fees.

Dated:  February 22, 2023.

> Respectfully submitted,
>
> /s/ Lance E. Leffel
> Lance E. Leffel, OBA #19511
> GABLEGOTWALS
> BOK Park Plaza
> 499 W. Sheridan Avenue, Suite 2200
> Oklahoma City, OK 73102-7255

lleffel@gablelaw.com
Telephone:  405.235.5500
Facsimile:   405.235.2875

and

David A. Hughes
(*admitted pro hac vice*)
JACKSON LEWIS P.C.
171 17th Street, NW, Suite 1200
Atlanta, Georgia 30363
Telephone: (404) 525-8200
Facsimile: (404) 525-1173
David.Hughes@jacksonlewis.com

and

Tracey R. Wallace
(*admitted pro hac vice*)
JACKSON LEWIS, P.C.,
500 N. Akard Street, Suite 2500,
Dallas, Texas 75201.
Telephone:  214-520-2400
Facsimile:  214-785-6908
Tracey.wallace@jacksonlewis.com

***ATTORNEYS FOR STATE FARM***

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):


R. Greg Andrews, OBA No. 190037
Matthew B. Eckstein, OBA No. 19087

*ATTORNEY FOR PLAINTIFFS*

<em>/s/ Lance E. Leffel</em>